NOONAN et al. v. FRUCO CONST. CO.

No. 12637.

Circuit Court of Appeals, Eighth Circuit.

Dec. 13, 1943.

William Kohn, of St. Louis, Mo. (Patrick A. Lavin, of St. Louis, Mo., on the brief), for appellants.

Major Bert E. Church, of Kansas City, Mo. (Philip C. Wise and Alroy S. Phillips, both of St. Louis, Mo., and Colonel Frank E. Shaw, of Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from an order dismissing an action by employees of the Fruco Construction Company against their employer for overtime pay alleged to be due them under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

Under Section 7 of the Fair Labor Standards Act, any employer must pay overtime compensation to any of his em-

634

ployees "engaged in * * * the production of goods for commerce." Section 3 (j) provides that "for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed * * * in any process or occupation necessary to the production thereof, in any State."

■ In appellants' amended complaint, the pertinent facts of which may be taken to be true for the purpose of the motion to dismiss,[1] it is alleged:

"That on and prior to October 12, 1941, and from then continuously to on or about August 29, 1942, the defendant was engaged in the construction of a group of buildings in the City of St. Louis, Missouri, known collectively as the "Small Arms Ammunition Plant,' designed and intended for use in and necessary for the production and manufacture of goods, namely, munitions for small arms, for trade, commerce and transmission from the State of Missouri to places outside thereof.

"During the said time, defendant employed plaintiffs and about 300 other men as guards to watch the premises and environments and the persons entering and leaving the same during the progress of said construction work * * *.

"During the time and at the place aforesaid, plaintiffs and the men above mentioned were employed and worked for the defendant in the capacity above stated * * *."

The trial court dismissed the action on the ground that appellants were not "engaged in commerce or in the production of goods for commerce" within the meaning of the Act.

It is appellants' contention, both in their brief and on oral argument, that in serving as guards and watchmen in connection with the erection of a plant "specially designed" for the manufacture of munitions to be sent into interstate commerce, they were engaged in a process or occupation necessary to the production of goods for commerce so as to be within the purview of the Act. They do not claim to be "engaged in commerce."

■ The legislative history of the Act makes it clear that Congress did not intend to give the phrase "engaged in commerce" a coverage which would reach out and encompass any employment activity which might "affect commerce" in the sense that the phrase has been used in other acts. Employment activities which merely "affect commerce" in some indirect way are not contemplated by the Act. Kirschbaum v. Walling, 316 U.S. 517, 522, 523, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 569, 63 S.Ct. 332; Higgins v. Carr Bros. Co., 317 U.S. 572, 574, 63 S.Ct. 337; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 174.

■ Nor was the phrase "engaged in * * * the production of goods for commerce" designed to apply to any employee who in some way renders services that may be said to be "necessary" in an ultimate sense to the production of goods for commerce. The work of an employee which "has only the most tenuous relation to, and is not in any fitting sense 'necessary' to, the production" is not within the intendment of the Act. There is no requirement that the employee himself participate physically in the productive process, but the activity in which he is engaged must have "such a close and immediate tie with the process of production for commerce" as to be "an essential part of it." Kirschbaum Co. v. Walling, 316 U.S. 517, 525, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638; Warren-Bradshaw Co. v. Hall, 317 U.S. 88, 91, 63 S.Ct. 125; Midcontinent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, 657.

■ The lack of precise statutory boundaries for a determination of coverage under the Act makes its application dependent upon facts peculiar or indigenous to the particular business or industry involved and necessitates an examination of the relationship of the employee to the production to which he claims his activities are "necessary". Kirschbaum v. Walling, supra; Walling v. Jacksonville Paper Co., supra; Warren-Bradshaw Co. v. Hall, supra; Musteen v. Johnson, 8 Cir., 133 F.2d 106, 108. And the burden is upon the employee to prove that he is engaged in the production of goods for interstate commerce within the meaning of the Act. Warren-Bradshaw Co. v. Hall, supra; Zehring v. Brown Materials, D.C.Cal., 48 F.Supp. 740; Muldowney v. Seaberg Elevator Co., D.C.N.Y., 39 F.Supp. 275.

■ In the instant case appellants were employed as watchmen or guards to protect the premises upon which the plant was be-

[1] Overstreet v. North Shore Corp., 318 U.S. 125, 127, 63 S.Ct. 494· Fleming v. . Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 54.

ing erected and to safeguard the materials going into its construction. It may be that their activities promoted and facilitated the erection of the plant and were, therefore, so closely connected with and directly related to the "production" of the plant as to be "necessary" thereto. But the plant itself was not a commodity which could be the subject of interstate commerce. It was permanently placed upon an immovable site of land and was not a thing transportable in commerce, nor a device or object upon which other articles could be shipped to other states. Clearly the activities which went into its construction were local.

Appellants assert, however, that inasmuch as the plant was designed for use in the production of munitions to be shipped in interstate commerce, their work as guards was an occupation necessary to the production of the munitions so as to bring appellants within the purview of the Act. It is difficult to perceive how the close ties and connections of the watchmen to the productive processes involved in the construction of the plant can be stretched to also cover the productive processes involved in the making of munitions. The operations of the watchmen were not a vital function of, nor an integral part in, the productive processes connected with the manufacture of munitions, nor did the work have any of the essential characteristics of munition manufacture.

While in a broad or ultimate sense the construction of a plant in which products will be manufactured may be said to be "necessary" to the manufacture, the activities of the watchmen in this case affect the manufacturing processes only remotely. The analogy of the building to a tool is faulty. The direct and important use of the plant, and its dominant characteristic, involves its utilization as a shelter or harbor for machines employed in the production of munitions, and although the plant's so-called "special design" may expedite the production, the facilitation of the processes of manufacture will come primarily through the use of the plant as a building and not as a tool.

Warren-Bradshaw Co. v. Hall, supra, is not controlling in this case as appellants contend. In that case the workers were members of a rotary drilling crew whose employer contracted with owners or lessees of oil lands to drill holes to a certain depth so as to enable cable drilling crews to "bring in" the well if oil were present in the oil sand stratum. In holding the employees entitled to coverage under the Act, the Supreme Court pointed out that "Oil is obtained only by piercing the earth's surface; drilling a well is a necessary part of the productive process to which it is intimately related." [317 U.S. 88, 63 S.Ct. 126.]

We fail to see in what manner the activities of appellants can be termed analogous to those of the rotary drilling crew. Its work was so closely related to the production of oil as to be in effect a constituent process thereof, while in the instant case the operations of appellants in their guarding activities were separated from the processes involved in the production of munitions by a clear and unmistakable gap. We are unable to find here that the watchmen employed to guard the construction of a new building are in an occupation "necessary" to the production of goods for commerce, even though it is contemplated that the products manufactured in the building will be sent into interstate commerce. Dollar v. Caddo River Lumber Co., D.C.Ark., 43 F.Supp. 822; Muldowney v. Seaberg Elevator Co., supra; Belzano v. Williams,[1] D.C.Cal.; Walling v. Snellings, D.C.Ala., 53 F.Supp. 851; Cf., Trefs v. Foley Bros.,[1] D.C.Mo.; Hewlett v. DeBalso Construction Corp., 180 Misc. 81, 43 N.Y.S.2d 650; Zehring v. Brown Materials, supra.

In its interpretive bulletin No. 5 of October, 1940, page 7, paragraph 12, the Wage and Hour Division expresses the view that "The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across State lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the building when completed will be used to produce goods for commerce."

While administrative interpretations of federal acts are not binding on the court, they are entitled to weight. Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L. Ed. 1345.

Affirmed.

---

[1] No opinion for publication.