## PARHAM et al. v. AUSTIN CO.

### No. 11622.

Circuit Court of Appeals, Fifth Circuit.

Dec. 17, 1946.

William E. Allen, of Fort Worth, Tex., for appellants.

Carl Wright Johnson and Woodville J. Rogers, both of San Antonio, Tex., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

## WALLER, Circuit Judge.

The Appellants were watchmen and guards employed by the Appellee during the time that the latter was constructing, for the United States, a plant at which it was intended that bombers would be made upon completion of the plant. These guards brought suit under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover the statutory wages, damages, etc. The period of employment covered by their suit is prior to any production of bombers in the plant. Their employer's connection with the plant ended upon its completion. Appellants' duty was to protect the job and its materials against thieves, spies, and saboteurs, and to that end to see that no improper persons entered the grounds on trains, trucks, automobiles, or otherwise. They were required to check thoroughly those coming in and going out of the enclosure and to let no one enter who did not have proper credentials and to let no one carry away anything that should not go out.

It was a new plant, as distinguished from an addition to an existing plant. Materials from out of the state were shipped to the job by train and by truck, and were used in the construction of the plant, where they came to rest. Plaintiffs had nothing to do with ordering, checking, unloading, billing, storing, or paying for, these materials. They did, however, open the gate to let into the grounds trains on which there was equipment that had come from out of the state, but their purpose was to check lest unauthorized persons should come in with the train. They also watched for broken seals on cars, thereby performing a police function for the purpose of discovering if any of the cars had been broken into and the commodities stolen therefrom.

■ The Court below held that these employees were not engaged in interstate commerce, nor in production of goods for commerce, nor in any process or occupation necessary to the production of goods, during the period of their employment.

We agree. The purpose of the guards at the railroad gates was not to keep out, or let in, trains, but to prevent the entry of unauthorized persons. The same was true as to trucks. The guards were not facilitating the movement of goods in interstate commerce. Moreover, the goods that were thus brought in were material used in construction that came to rest in the building under construction.

No goods were produced during the period of their employment. Their employer was not then, nor at any other time, engaged in the production of goods for commerce.

The only other question is whether or not these guards were "in any other manner working on such goods or in any process or occupation necessary to the production thereof." We do not have a case of night watchmen about plants where goods were being produced for commerce. Such watchmen have generally been held to be within the coverage of the Act. In the instant case the employer was engaged in the construction of a plant that was intended some day to produce goods for commerce. This was a war project being constructed as a place in which it was intended to manufacture bombers.

■■ There can be no process or occupation necessary to the production of goods for commerce unless goods are produced. Nothing can be an essentiality to production if there is no production. During the period involved it was contemplated that goods would be produced in the future, but if the war had ended before the plant was completed, there doubtless would never have been any production of planes, as it is a matter of common knowledge that hundreds of government war plants went unfinished and unused when the war ended. For aught the parties then knew this could have happened to this plant. The Act does not cover a process or occupation necessary to produce an instrumentality that may or may not some day be used in the production of goods.

■ The cases all recognize that Congress did not exercise the full extent of its power in the enactment of the Fair Labor Standards Act and that it was not intended

to cover every sort of activity or enterprise that might in some form or fashion, at some time or other, have some bearing upon the production of goods by someone. It was intended that the line should be drawn somewhere. The service that a man is engaged in must be viewed in the light that surrounds him at the time of its performance and not in the light of future contingencies, possibilities, and developments. One engaged in construction work is paid according to the type of work that he then does and not according to the hopes and aspirations of its owner or, mayhap, his lessee.

We are of the opinion that the interpretive bulletin No. 5 of October, 1940, page 7, paragraph 12, of the Wage and Hour Division, correctly interpreted the Act in this statement:

"The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across State lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the building when completed will be used to produce goods for commerce."

We also agree that the holding of the Circuit Court of Appeals for the Eighth Circuit in Noonan v. Fruco Const. Co., 8 Cir., 140 F.2d 633 was correct.

The judgment of the Court below is Affirmed.