**KELLY v. FORD, BACON & DAVIS, Inc.**

No. 9211.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 16, 1946.

Decided June 12, 1947.

As Amended July 10, 1947.

Harry R. Kozart, of Philadelphia, Pa., for appellant.

Harry E. Kohn, of Philadelphia, Pa., for appellee.

Frederick U. Reel, of Washington, D. C., amicus curiæ.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and MURPHY, District Judge.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment in the District Court in favor of the defendant employer in an action brought under Section 16 (b) of the Fair Labor Stand-

ards Act of 1938 [1] by the plaintiff employee to recover overtime compensation allegedly due by virtue of Section 7 of the Act. The Administrator of the Wages and Hours Division as amicus curiæ filed a brief and participated in the oral argument in support of the appellant.

Ford, Bacon & Davis, Inc., the defendant employer, is a construction engineering corporation. On May 22, 1941 it entered into a contract with Jacobs Aircraft Engine Company providing for certain supervisory and consultant services relating to the latter's then existing plant at Pottstown, Pa., which manufactured airplane parts and motors for interstate commerce. On October 31, 1941, Ford, Bacon & Davis, Inc., made an entirely new and separate contract with the Jacobs Company and Defense Plant Corporation for the design and construction of another aircraft engine plant also in Pottstown. Kelly, the plaintiff appellant, was employed by the defendant some twenty-three months in connection with the extra work arising in the course of the erection of the new factory. As changes in design and construction occurred they were taken care of by the issuance of work orders. The latter were authorizations by Defense Plant, Jacobs, and the appellee, to various subcontractors for such extra original construction as was required and had not been taken care of in the original contracts. Kelly's duties were confined solely to those work orders. He would check the fact whether an "extra" was required and, if it was, ascertain its cost, prepare a work order and, after this had been approved, mail or otherwise have it delivered with forwarding letters to the particular subcontractors.

In the District Court, where the case was tried without a jury, the employer contended that Kelly was an executive and therefore excluded from the provisions of the Act. The Trial Court found as a fact that "plaintiff's duties were to check facts and follow routine procedure and did not involve the use of discretion and independent judgment." The Court also found that plaintiff's compensation was based upon a forty hour week and that his class of employees was not guaranteed a minimum weekly or monthly salary. The Court refused defendant's requests to find that plaintiff was an administrative employee who exercised independent judgment and discretion.[2] The record fully supports the Court's action. Appellee presses the point because the Trial Judge said in his opinion [71 F.Supp. 311, 314] that it was unnecessary to discuss "the question whether he [Kelly] belonged to one of the exempt classes under the Act." [3] Since the above findings of fact show that the plaintiff was

[1] Act of June 25, 1938, c. 676, §§ 7, 16 (b), 52 Stat. 1063, as amended, Oct. 29, 1941, c. 461, 55 Stat. 756, 29 U.S. C.A. §§ 207, 216(b).

[2] The Court in refusing to affirm such requests said: "While it is true that the plaintiff was required to and did exercise a considerable amount of discretion and judgment, I am satisfied that on the whole his duties were not such as to make him an administrative or professional employee."

[3] Section 13 (a) (1) of the Wages and Hours Act, 29 U.S.C.A. § 213 (a) (1), exempts employees employed in an administrative capacity as such term may be defined by the Administrator. The term is defined in the Administrator's Official Regulations as follows:

"Sec. 541.2. Administrative.—The term 'employee employed in a bona fide * * * administrative * * * capacity' in Section 13 (a) (1) of the Act shall mean any employee

"(A) Who is compensated for his services on a salary or fees basis at a rate of not less than $200 per month * * *, and

"(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity * * * where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the

not included in any of the exempt classes, they effectively dispose of that issue.

■ Appellant first argues that his employer was engaged in the production of goods for commerce. If the work involved had been of the type before us in Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932, 937, his position would be justified. In that case we found that the construction jobs passed upon were "all integral parts of existing plants and that their purpose was to continue the operation of the plants, all of which are producing goods for interstate commerce." In the present situation we do not have as in McCrady an extension of current facilities. The owner was Defense Plant Corporation, not the Jacobs Company. It was stipulated between the parties that the Ford, Bacon & Davis agreement with Jacobs of May 1941 "was in no-wise connected with the contract for design and construction of the aircraft engine plant [the new plant]." The Jacobs factory production was exclusively for the Canadian Government. The new plant was intended for the construction of airplane engines for the United States from materials owned by the United States.[4] It was a $13,000,000 project, independent of the Jacobs factory, and while the record itself is barren as to how far away its location was from the Jacobs' building, there is nothing in the evidence to indicate that it was near by. Nor is there any testimony that the Jacobs Company had reached the limits of its manufacturing capacity in its own plant. Plainly the erection of the factory for the Defense Corporation was new construction and as such not within the coverage of the Wages and Hours Act, 29 U.S.C.A. § 201 et seq. Walling v. McCrady Const. Co., supra; Wells v. Ford, Bacon & Davis, Inc., D.C.W.D.Ky., Dec. 31, 1943, affirmed, 6 Cir., 145 F.2d 240; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 663; Parham v. Austin Co., 5 Cir., 158 F.2d 566. And this is the interpretation generally followed by the Wage and Hour Division of the Department of Labor.[5] Roland Electric Co. v. Walling, 1946, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334, and Pedersen v. J. F. Fitzgerald, 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119, referred to by appellant, all had to do with repairs, replacement or extension of existing facilities.

■ Prior to the new building's being finished, production was started in a part of it by then completed. Bartlett, the project manager, testified "that most of the time the construction was ahead of the design." As a result there was a change in the ventilating system with plaintiff preparing the necessary extra work orders. This is further urged as participation by the plaintiff in production of goods for commerce on the theory that it amounts to repair of existing facilities. No details of the particular work or how much plaintiff had to do with it are given. There is nothing to suggest that the faulty ventilation was not checked and corrected as a more or less ordinary incident in the course of original construction. We agree with the District Judge that the proof as to the item was "wholly insufficient" to support plaintiff's contention regarding it. Walling v. Jacksonville Paper Co., 317 U.

exercise of discretion and independent judgment."

4 This statement simply points out the difference in the production of the new plant from that of the Jacobs factory. The Fair Labor Standards Act is applicable to work under government contract. See Walling v. McCrady Const. Co., supra.

5 Wage and Hour Interpretative Bulletin No. 5, Paragraph 12, Dec. 2, 1938, revised Nov. 1939, reads: "The question arises whether the employees of builders and contractors are entitled to the benefits of the Act. The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across state lines. Thus, it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce. There may be particular employees of such construction contractors, however, who engage in the interstate transportation of materials or other forms of interstate commerce and are for that reason entitled to the benefits of the Act."

S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. And see Wage and Hour Manual Cumulative Edition 1944–1945, p. 93.

It is then urged on behalf of the plaintiff that irrespective of whether the defendant employer was engaged in commerce or in the production of goods therefor, plaintiff was so occupied because of the nature of his own position. Plaintiff's individual activities are the test of whether he has the "immediacy of participancy" in interstate commerce as to bring him within the "in commerce" clause of the Act. McLeod v. Threlkeld, 319 U. S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Skidmore v. John J. Casale, Inc., 2 Cir., 160 F.2d 527, 529.

Under this branch of the appeal it is first contended that Kelly in processing the work orders performed an essential preliminary step to the shipment of goods in interstate commerce and was, therefore, embraced within the intendment of the Act. But those work orders were in reality contracts for additional original construction. They were not for the purchase of materials. The latter were neither ordered, purchased or transported by Kelly or his employer. As a result of those work order contracts the Trial Court found that materials and equipment did come into Pennsylvania from without that state. But those materials and equipment came to the subcontractors for use by them in their individual part of the original construction of the new plant. The lower Court found as a fact that "Substantially all of the plaintiff's time was spent at the construction site in negotiations and consultations with subcontractors, representatives of Defense Plant Corporation and Jacobs Aircraft Company and other employees of defendant employer solely in original construction work at the project site; in examining contracts; in making technical computations and in drafting contracts." There is ample basis in the record for such finding.

■ So while the plaintiff may have collaterally affected the movements of the materials and equipment we do not consider that it is within the contemplation of the Act to say that what he did bore the necessary close tie to commerce called for by the decisions.[6] The enforcement of the pertinent provisions of the Act, as the Supreme Court has said, involves "the courts in the empiric process of drawing lines from case to case, and inevitably nice lines" (10 East 40th Street Bldg. v. Callus, 325 U.S. 578, 579, 65 S.Ct. 1227, 1228, 89 L.Ed. 1806, 161 A.L.R. 1263), with the Courts having "the independent responsibility of applying ad hoc the general terms of the statute to an infinite variety of complicated industrial situations." Kirschbaum v. Walling, supra [316 U.S. 517, 62 S.Ct. 1120]. Merely because an occupa-

---

[6] In Baloc v. Foley Bros., D.C.Minn., 1946, 68 F.Supp. 533, original construction was involved with the plaintiff doing much the same type of work as Kelly did. It concerned processing and approving invoices connected with business of both intrastate and interstate character. The Court held that the plaintiffs' occupations were so remote from being "engaged in commerce" as to render the Act inapplicable in that respect. The Court recognized that employees performing clerical work come within the coverage of the Act if the facts surrounding their employment warrant. This decision is not contrary to an earlier opinion in the same Court, namely, Phillips v. Meeker, etc., Assn., 63 F.Supp. 733, 740, affirmed by the Circuit Court of Appeals for the 8th Circuit, Dec. 17, 1946, 158 F.2d 698. There, using the same test, it was decided that under the facts the plaintiff employees were within the scope of the Act. The business of the defendant public utility company in the Phillips case was the furnishing of power which resulted in interstate production. The office employees were held to be an integral part of that business, "necessary to the fulfillment of the co-operative's contract to furnish electrical energy to their [customers] and the maintenance of a business organization which continuously supplies the electrical power which produces goods for commerce." The employees were therefore considered to be producing goods for commerce. The Circuit Court of Appeals refused, as unnecessary, to adopt the further finding of the District Court that the employees were also "engaged in commerce."

tion is indispensable in the sense of being included in the long line of causation which brings about so complicated a result as finished goods does not bring it within the scope of the Fair Labor Standards Act. 10 East 40th Street Bldg. v. Callus, supra. This is so here where an essentially local activity is involved and where the gathering of material for the work orders and attending to the mechanics of their approval by three sets of principals is in itself so far removed from the subcontractors' material and equipment shipped to the latter for their work on an intrastate construction. Indeed there is nothing in the record to show that Ford, Bacon & Davis, Inc., or Kelly knew or cared where the materials came from as long as they were available when needed. And such was the war time pressure that, as Bartlett testified, "there were plenty of times when emergencies arose where the extra work contract was produced afterwards * * * sometimes we did not have time to get oral approval from the Defense Plant Corporation."

In support of appellant's theory there is cited the well known language of Walling v. Jacksonville, 317 U.S. 564, 567, 63 S.Ct. 332, 335, 87 L.Ed. 460, where the Supreme Court stated that "the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce." Concerning this the same Court shortly thereafter in Overstreet v. North Shore Corp., 318 U.S. 125, 128, 63 S.Ct. 494, 496, 87 L.Ed. 656, said, "And in determining what constitutes 'commerce' or 'engaged in commerce' we are guided by practical considerations." The Jacksonville opinion, supra, page 570, 63 S.Ct. 336, 87 L.Ed. 460, follows Kirschbaum Co. v. Walling, supra, in holding that "Congress did not exercise in this Act the full scope of the commerce power." In the Callus case Mr. Justice Frankfurter said, "For as was pointed out in Walling v. Jacksonville Paper Co., supra, 317 U.S. at page 570, 63 S.Ct. at page 336, 87 L.Ed. 460, we cannot 'be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states.' We must be alert, therefore, not to absorb by adjudication essentially local activities that Congress did not see fit to take over by legislation." It has been long settled as stated in Swift & Co. v. United States, 196 U.S. 375, 398, 25 S.Ct. 276, 280, 49 L.Ed. 518, that, "commerce among the states is not a technical legal conception, but a practical one, drawn from the course of business."

■ It is next contended that the preparation and mailing of the letters and work orders constitute interstate commerce and the production of goods for interstate commerce within the meaning of the act.

There is a grave dispute between the parties whether any of the work orders and accompanying letters sent out by Kelly crossed state lines.[7] But even assuming that they did, we are satisfied from our in-

---

[7] Defendant's spot check of these which was acquiesced in on behalf of the plaintiff, indicates they were sent between the appellee's field office and subcontractors' field offices at the job site. However, plaintiff specifically testified that the extra work orders to out of state subcontractors were mailed to the latter's home offices. He said that there were 323 such out of state subcontractors amounting to twenty-nine per cent of the total of extra work subcontractors and that 233 letters went to them out of a total of 657 letters sent out by him. Plaintiff's requested findings of fact numbers eleven and thirteen which were affirmed by the Court and his number twelve which was qualifiedly affirmed seem founded on that testimony of the plaintiff, though those findings carefully avoid stating that any of the work orders or letters actually crossed state lines. This conclusion is further justified by the general inference to be taken from the District Court's supplementary opinion in the case.

The pertinent findings of fact are:

"11. There were 123 contracts, of which 41, or 33% were with persons who had their main office outside of the State of Pennsylvania. Plaintiff worked on 1132 extra work orders, of which 323 or 29% were granted to persons who had their principal office outside of the State of Pennsylvania."

"Affirmed."

"12. Plaintiff's duties required him to communicate by mail with the contractors and he wrote 657 letters of which 233 or 37% were sent to persons whose

dependent examination of the evidence that the District Judge was entitled to find as he did that these were "an incident of intrastate business." The closest appellate decision to the instant problem is Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 790, where the Court held that "the mere writing of letters or the drawing of papers which have no value of their own except as records, are not to be counted." Earlier in that opinion the Court said, 156 F.2d at page 789: "A lawyer who in the course of his practice writes letters, or draws deeds or wills, or prepares briefs and records, is not on that account within § 203 (j); and ·e same is true of the correspondence of a broker and of a banker. The definition of 'goods' in § 203 (i) might literally go so far even as that; but it would be unreasonable to the last degree to suppose that Congress meant to cover such incidents of a business whose purpose did not comprise the production of 'goods' at all. Indeed, were it otherwise, the Act would sweep into its maw every business, however local, which manufactured nothing whatever, merely because it was carried on by correspondence, which is the case with all business."

Collins v. Ford, Bacon & Davis, Inc., D.C.E.D.Pa., 66 F.Supp. 424, concerned the identical project now before us. Collins was a draughtsman producing plans and specifications which were transmitted by the defendant to contractors both inside and outside Pennsylvania in order that the latter might bid on, execute and continue to execute the work designed by the defendant. It was not contended that plaintiff was producing goods for inter-

state commerce. The Court held that plaintiff's work did not bring him under the "in commerce" clause and further that the covering letters did not in themselves constitute an act of interstate commerce. Damon v. Ford, Bacon & Davis, Inc., D.C. E.D.Pa., 62 F.Supp. 446, also arose out of the present construction. Damon was defendant's chief field time checker. Among other things, he procured time data and processed any discrepancies between the records of subcontractors and those of his department. In addition he set up a system to expedite the handling of contractors' records. During an employment of 11½ months he wrote 176 letters and made approximately six telephone calls a month, to subcontractors who had their home offices outside of Pennsylvania. The case was disposed of on the ground that the interstate activity of the employee was not a substantial part of his work week.[8]

Appellants cite Lenroot v. Western Union Telegraph Co., 323 U.S. 490, 65 S.Ct. 335, 341, 89 L.Ed. 414, where the Supreme Court said, "That 'ideas, wishes, orders, and intelligence' are 'subjects' of the interstate commerce in which telegraph companies engage has also been held." While reversing the decision of the Second Circuit Court of Appeals in that case, 141 F.2d 400, on the ground that telegrams taken as documents were not "shipped" across a state line, the Court held that telegraphic messages are clearly subjects of commerce and hence "goods" under the Act. The later Bozant decision of the Second Circuit Court of Appeals, supra, where the Lenroot opinion of the Supreme Court was considered is certainly not in

---

principal office was outside of the State of Pennsylvania. In connection with his duties he received 1907 letters of which 751 or 39% were from persons whose principal office was outside of the State of Pennsylvania."

"Affirmed with the qualification that there is no evidence as to what part of the plaintiff's time was spent in writing letters and consequently the percentage of letters written to or received from persons outside of Pennsylvania has little or no bearing upon the percentage of the plaintiff's total time attributable to such letters."

"13. Plaintiff's duties required him to

spend a substantial part of his time at work in processing work orders which were charged to persons whose principal office was outside of the State of Pennsylvania, resulting in materials and equipment being shipped from points out of the State into the State of Pennsylvania. * * * "

"Affirmed."

[8] See also Scott v. Ford, Bacon & Davis, D.C.E.D.Pa., 55 F.Supp. 982; Maitrejean v. Metcalfe Co., D.C.Minn., 72 F. Supp. 100, and Divins v. Hazeltine Electronics Corporation, D.C.S.D.N.Y.1946, 70 F.Supp. 686.

conflict, as is claimed, with the doctrine that persons regularly in the business of interstate communication are engaged in interstate commerce. The Circuit Court of Appeals had originally so stated in its own opinion in Lenroot. And this is settled law but it is not the question with which we are faced.

Another group of cases stressed by the appellant and the Administrator is typified by International Text-Book Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann.Cas. 1103, where a foreign corporation was engaged in teaching by correspondence. It had an agent in Kansas securing scholars and receiving and forwarding money from them. The Supreme Court decided that such communications related to the corporation's regular business and therefore that it was engaged in interstate commerce. So too a mining company which produced gold and silver ores reducing them to bullion which was transported by mail to another state and sold to the United States Mint was held to be "engaged in the production of goods for commerce." Fox v. Summit King Mines, 9 Cir., 143 F.2d 926, 928. Decisions such as Edwards v. People of State of California, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119, and Caminette v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann. Cas.1917B, 1168, stating the principle that transportation of persons between the states is interstate commerce have no relevancy to our query. Nor have cases like Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331, where main office employees of a large interstate grocery, whose work was substantially connected with interstate shipments between the various stores were held to be within the Act. The principle of Fleming v. Jacksonville Paper Co., 5 Cir., 128 F. 2d 395, affirmed Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, that the fundamental question is the work of the individual employee is, as has been stated, conceded and followed.

In that case warehouse employees regularly selling or delivering across state lines or buying and receiving across state lines were held to be in commerce whether they write the letters and keep the books or load and unload or drive the trucks.

The Administrator in maintaining that the preparation and approval of the work orders is engaging in commerce greatly relies on Federal Trade Commission v. Pacific Paper Trade Ass'n, 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534, which deals with commerce under the Federal Trade Commission Act of 1915, 15 U.S.C.A. § 41 et seq. The question there involved restraint of trade by interstate paper dealers. Retail dealers would make contracts of purchase with wholesalers who in turn would enter into purchase agreements with manufacturers in other states who would ship to the retailers. The wholesalers agreed to prices in advance and such agreements because of a presumed intent by the wholesalers to purchase out of state, were held within the antitrust prohibition of federal law. We do not see how this decision helps the appellant or that it is at all applicable to the facts before us.

We do not think that this is a border line case. Original construction is definitely beyond the contemplation of the Act and appellant's employment cannot be fairly removed from that category. It is therefore not just a question of degree as in so many wages and hours problems for Kelly was an integral part of the local enterprise. What he did remotely affected commerce, but the gap between the primary intrastate operation and the collateral interstate commerce feature was not bridged for any practical purposes by the processing and mailing of the orders and letters which appear in this matter. The facts here present no justification for holding that the appellant in his work for the defendant employer was engaged in commerce or in the production of goods for commerce within the scope of the Wages, and Hours Act.

Affirmed.