## MILLER v. LUMMUS CO.
### No. 4534.

Court of Civil Appeals of Texas. Beaumont.
Oct. 28, 1948.

Rehearing Denied Dec. 1, 1948.

O'Fill & O'Fill, of Beaumont, for appellant.

Andrews, Kurth, Campbell & Bradley, of Houston, for appellee.

COE, Chief Justice.

Appellant G. P. Miller instituted this suit against the Lummus Company for wages in excess of $500.00 allegedly due him for labor performed for appellee in the construction of the Neches Butane plant in Jefferson County, Texas, alleging that such wages were due him for labor performed by him for hours in excess of 40 hours per week and in violation of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–207. Upon the trial of the case to the Court without intervention of a jury, judgment was rendered that appellant, plaintiff below, take nothing by this suit. In due order appellant has brought this matter before us for review.

Appellant alleged that he applied for and was given a position with appellee at his premises at Port Neches, Jefferson County, Texas, as a bookkeeper-clerk working for $50.00 per week; that he entered into this employment and worked until about April 1, 1943 at which time his pay was increased to $55.00 per week; that the appellee company was engaged in interstate commerce and operated under what is known as United States Fair Labor Act and that at and after the period of January 18, 1943, 40 hours per week was a work week and for all hours put in over same time would be paid for at the rate of time and one-half; that appellant terminated his employment with appellee company about March 1, 1944; that the appellee company was engaged in the business of preparing and the processing of oil and petroleum products to be used in the manufacture of rubber and compounds and solutions used in such preparation and management, and that in connection with its work appellant shipped and received in interstate commerce as consignor and consignee machinery, tools and appliances and materials to be handled by plaintiff and that the work plaintiff was engaged in was the business of shipping through interstate commerce for and on behalf of appellee as consignor and receiving on behalf of appellee as consignee, or goods was manufactured in the plant for shipment in interstate commerce; that during all the time that appellant was so engaged in such employment he was engaged in receipt of interstate commerce and shipping through interstate commerce articles for use in said plants and articles manufactured and to be shipped from said plant, alleging that appellee owed him the sum of $955.70 for over-time wages, and

that he was likewise entitled to recover an equal amount as liquidated damages and reasonable attorneys' fee, and that independent of the Fair Labor Standards Act defendant had agreed in writing with the Defense Plant Corporation that it would pay its employees according to the schedule of hours and wages fixed by the Act and by Executive Order No. 9240, 40 U.S.C.A. § 326 note, by the President of the United States. At appellant's request the trial court made and filed its findings of fact and conclusions of law as follows:

## Findings of Fact.

1. The plaintiff, G. P. Miller, was employed by the Lummus Company during the period January 24, 1943, to March 20, 1944.

2. During the above period The Lummus Company was engaged exclusively in the business and operations of the original construction of a plant or factory in Jefferson County, Texas, which plant ultimately produced butadiene for shipment in interstate commerce. The Lummus Company was not engaged in the production of goods for interstate commerce, and did not itself produce butadiene.

3. Mr. Miller worked on those days and for the number of hours shown in the first seven columns of the printed payroll record introduced as Exhibit —— by stipulation of the parties. The hours shown in parenthesis are those hours which Mr. Miller did not work, but for which he was given credit as sick leave.

4. The amounts shown in the columns "Net Amount Due" are the amounts actually paid to Mr. Miller by the Lummus Company.

5. Mr. Miller's duties were those of an "Accounts Payable Auditor" which duties largely consisted of matching invoices for material against purchase orders issued and the receiving and inspection reports from the Receiving Department, and to see that all three agreed. When the audit showed that the three agreed, the invoice was approved for payment. When his audit showed that there was a discrepancy, he would investigate the discrepancy and proceed to put the invoices in acceptable form. This investigation would, on occasions, involve correspondence with vendors of material who resided in states other than Texas. A substantial amount of the materials shipped to the Lummus Company for the construction of the plant moved in interstate commerce, but the interstate character of the materials ended upon delivery to the job site and before the receiving and inspection report was prepared. No consequential part of Mr. Miller's duties pertained to the goods before the interstate shipment ended. Mr. Miller was not in the Purchasing Department and had no duties with respect to the purchasing or ordering of materials.

## Conclusions of Law.

1. The Lummus Company was not engaged in the production of goods for commerce within the purview of the Fair Labor Standards Act. 29 U.S.C.A. § 207.

2. The plaintiff, G. P. Miller, was not engaged in commerce within the purview of the Fair Labor Standards Act, 29 U.S. C.A. § 207, to which findings and conclusions appellant filed his exception and has predicated his 16 Points of Error, complaining of the various findings of fact and conclusions of law made by the trial court.

It becomes our duty to first determine whether the findings of fact and conclusions of law as made by the trial court are sufficient to support the judgment entered, and further determine whether the findings of fact of the trial court find support in the evidence. We fail to find any evidence in the record to support appellant's allegation that appellee was engaged in the production of goods for interstate commerce. Therefore, for appellant to be entitled to recover under the Fair Labor Standards Act it was necessary for him to show that he was engaged in interstate commerce or that his duties were directly connected with interstate commerce. On this point we quote only a part of the evidence given by appellant. We do this for the reason that if there is any evidence of probative value to support the findings of the trial court his findings should be upheld:

"Q. Mr. Miller, during the time you were working for The Lummus Company,

did you, throughout have exactly the same duties or did they change? A. No, sir, they didn't change, same duties throughout.

"Q. Will you state, briefly, what those duties were? A. Auditing invoices on material received in the plant for the construction of that butadiene plant, from all over the United States. Carrying on correspondence.

"Q. Will you describe in a little more detail just what your work was, as invoice auditor? A. Matching invoices for material against purchase orders issued and the material received and the report from the receiving department, to see they all three agreed, and stamping The Lummus Company stamp on the invoices, signing our names and account number and putting the distribution on invoices for the purpose of payment.

"Q. There was a Receiving and Inspection Report was there? A. The Receiving report, purchase order and the invoices and handling correspondence pertaining thereto.

"Q. You don't know, from your own knowledge, exactly how they went about making these Receiving reports? A. Yes, I do. I had a number of occasions to go down to this department.

"Q. Well, just— A. To find out more details on material and have it re-checked or something like that, and that stuff is received—I will proceed now with answering your question: That stuff is received in various and sundry ways: by express, freight, and truck; and it is carried to their platform and unloaded, and when it is unloaded they have men right there to check the materials as it comes off the truck or car into the warehouse.

"Q. That is the Receiving Department? A. Yes, sir.

"Q. Your referred to handling correspondence, what type of correspondence? A. Any correspondence necessary to get an invoice in acceptable form, handling direct with the vendors.

"Q. In other words if a vendor has shipped material and hasn't the invoice in proper form, you would correspond with the vendor? A. I would, myself; not the office manager, but each individual audit clerk.

"Q. For the purpose of getting the invoice in proper form? A. Yes, that is right, in acceptable form. Any loss or damage, such as that, we handled the correspondence with them, and any such difference in price, such as that, we handled all the correspondence.

"Q. Or any discrepancies? A. That's right.

"Q. What other duties that you haven't so far described did you have? A. I believe that about covers my duties out there."

It is true that appellant testified that he carried on considerable correspondence with suppliers of material out of the State in connection with the shipment of materials to appellee. However, we are convinced that the evidence just quoted was sufficient to support the finding of the trial court that no consequential part of appellant's duties pertained to the goods before the interstate shipment ended, and that he was not in the purchasing department and had no duties with respect to the purchasing or ordering of materials and his conclusion that the appellant was not engaged in commerce within the purview of the Fair Labor Standards Acts, supra. See: Barbe v. Cummings Construction Co., 4 Cir., 138 F.2d 667; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633, 634; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Kelly v. Ford, Bacon & Davis, 3 Cir., 162 F.2d 555.

The only remaining theory upon which appellant could have been entitled to recover would have been upon a contract obligation on the part of appellee to pay the plaintiff premium compensation for over-time work. This burden he failed to discharge. The only evidence tendered on this question was an excerpt from appellee's original construction contract in which appellee agreed to comply with and give all stipulations and representations required by applicable federal laws. This excerpt from said contract

was excluded by the trial court, which act is the basis of one of appellant's points. Appellant cites the Walsh-Healey Act, 41 U.S.C.A. § 35, as being applicable to this contract. This Act applies only to manufacturers of or regular dealers in materials, supplies, articles or equipment to be manufactured or used in the performance of the contract and, therefore, could have no application to the question here involved. Neither do we think the Copeland Act, 40 U.S.C.A. §§ 276 b,[1] 276 c, or the Davis-Bacon Act, 40 U.S.C.A. §§ 276a to 276a—5, have any application to this case, and in no way supports appellant's right of recovery. This is also true of the so-called eight hour law, 40 U.S.C.A. § 321, et seq., which applies only to the employment of laborers and mechanics and therefore not applicable to appellant, and for that reason the court correctly excluded the excerpt from the original contract as appellant was neither a mechanic nor a laborer, the only class of workmen covered by the excerpt from the contract. See Milligan v. San Antonio & G. S. Ry. Co., Tex.Civ.App., 46 S.W. 918.

The evidence is amply sufficient to support the findings as made by the trial court. It is therefore our opinion that a proper judgment was entered. It is therefore affirmed.

---

[1] 1948 Criminal Code, 18 U.S.C.A. § 874.