## COOPER et al. v. RUST ENGINEERING CO.

## LEWIS et al. v. RUST ENGINEERING CO.
### Nos. 326, 374.

United States District Court
W. D. Kentucky, Paducah Division.
April 18, 1949.

James G. Wheeler (of Wheeler, Marshall & Shelbourne), of Paducah, Ky., for plaintiffs.

E. Palmer James, of Paducah, Ky., for defendants.

SWINFORD, District Judge.

The plaintiffs brought these actions under the Act of Congress known as the Fair Labor Standards Act of 1938, as amended, which is Sections 201 to 219, Title 29 U.S.C.A.

The defendant, a construction company by which all the plaintiffs were employed, was engaged near Paducah, Kentucky, in the construction of a defense plant to be

used for the manufacture of explosives for use by the United States Government in the prosecution of World War II. All of the work of the plaintiffs was during the war period while the war was in active progress. The plant was constructed on approximately 16,000 acres of land and as the work progressed to the point where a part of the plant was in operation, the manufactured product in various forms was shipped from Kentucky to other states and foreign countries. The number of defendant's employees at one time was near 13,000.

In connection with the work of construction a part of the various materials used were received from other states of the Union and were used by the defendant in the construction work. The defendant ordered, received, checked and in some instances where materials were defective or not up to specifications reshipped these materials. The plaintiffs served in various capacities, alleged and proved, as nurses, telephone operators, clerks receiving and checking material and supplies, clerical, stenographic and office workers and a small group classified in the record as clerks connected with the maintenance of architects' and engineering records of the construction work, including blueprints of buildings and other facilities.

All of the plaintiffs were paid by the defendant a monthly salary or wage. They were not paid by the hour and were not paid overtime or time and a half for all hours worked over forty hours per week.

The defendant was engaged solely in the construction of the plant and had nothing to do with the handling of the products of the plant and the work of the employees was, of course, limited to local intra-state building activities.

The construction was on a contract with the United States Government on what is known as a cost-plus-a-fixed-fee basis.

■ Plaintiffs' right to recovery, if any, must be based solely on law. Their claims are entirely without equity. They held good jobs with good hours and excellent monthly pay for what they did. They were given deferment from military service and every possible benefit which a benevolent government fighting for its life could give them. In this time of national stress where America's future very existence hung in the balance they accepted their pay envelopes with no complaint of mistreatment under law and now in a calmer time seek to gouge for what might be termed a premium payment that came as an afterthought. Consequently, any recovery must be found to be solely as a legal and in no sense a just obligation of the United States, the ultimate payor.

The purposes of the Fair Labor Standards Act were justified and its adoption made imperative by substandard labor conditions in this country. The merits of the law must now surely convince its most severe critics of the necessity for just such legislation. Its application in given cases has established a well defined line of authorities that cover certain employees even remotely connected with "commerce" and the "production of goods for commerce", as provided in section 7, 29 U.S.C.A. § 207.

It has been held by the United States Supreme Court that numerous occupations not hitherto generally thought of as related to interstate commerce, such as elevator operators, watchmen, firemen and porters engaged in buildings in which goods were produced for commerce and performing work in relation to such production, were so closely connected with the process of production for commerce, extending beyond the boundaries of the state, as to be essentially a part of it. Kirschbaum Co. v. Walling, etc., 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, Agent, et al., 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83.

I find nothing, however, that brings such construction employees within the purview or scope of the Act within the intention of Congress as it has been defined by the courts.

Counsel for the plaintiffs has ably presented their claims and filed well prepared briefs with copious citation of authorities. I have carefully examined the authorities on which he relies, with the exception of certain of them not available to me. I do not believe they are sufficient for the Court to find a judgment in favor of any of the plaintiffs.

In the case of Walling, Adm'r., etc. v. Craig et al., D.C., 53 F.Supp. 479, 480,

cited by plaintiffs' counsel, the Court found as a fact that: "Defendants * * * employed several hundred persons in the repair, maintenance and *re*construction of public roads in the States of Minnesota, North Dakota, South Dakota, Montana, Wisconsin, Wyoming, Iowa, Nebraska and Washington, and in their principal place of business, general offices, warehouse and machine shop located in Minneapolis, Minnesota." (Italics mine.) Construction of a new plant, as in the instant case, is a state of fact which distinguishes this record from that before the court which found that the contractors were engaged in the "repair, maintenance and reconstruction" of public roads.

It might be pointed out that the Court held as a matter of law in that case that: "Defendants' employees employed off the road and described generally as 'off-the-road employees' who produce and prepare local materials as sand, gravel, rock or earth, or who operate stationary off-the-road bituminous plants, are not engaged in the production of goods for commerce or in commerce or in work so closely related thereto as to be practically a part thereof and are not within the coverage prescribed by the Act."

The holding of the Court in the case of Reliance Storage & Inspection Co., Inc., v. Hubbard, D.C., 50 F.Supp. 1012, 1013, wherein the company brought an action against the employee Hubbard for a declaratory judgment to determine whether the employee who was engaged as a watchman in a tobacco storage warehouse used for storing tobacco being aged by manufacturers was within the coverage of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, is not in conflict with the ruling here. In that case the employee was declared to be within the coverage of the Act and the Court said: "I am satisfied that the employee here was engaged in 'commerce' and also 'in the production of goods for commerce', as these terms are used in Sections 206 and 207 of the Act. The Supreme Court has held that leaf tobacco 'enters the stream of commerce', at 'the marketing warehouse', which is described as the 'throat'. Mulford v. Smith, 307 U.S. 38, 47, 59 S.Ct. 648, 652, 83 L.Ed. 1092."

The facts before the Supreme Court in the case of Kirschbaum Co. v. Walling, Adm'r, etc., 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, cited by plaintiffs as sustaining their position in this case, are entirely distinguishable from the facts in the instant case. In the Kirschbaum case the court said: "The facts in the two cases differ only in minor detail. In No. 910, the petitioner owns and operates a six-story loft building in Philadelphia. The tenants are, for the most part, manufacturers of men's and boys' clothing. In No. 924, the petitioners own and operate a twenty-two story building located in the heart of the New York City clothing manufacturing district. Practically all of the tenants manufacture or buy and sell ladies' garments. Concededly, in both cases the tenants of the buildings are principally engaged in the production of goods for interstate commerce."

This case emphasizes that the buildings were being used by employees whose employers were engaged in the production of goods. Section 3(i), which is section 203(i) of Title 29 U.S.C.A., defines the term "goods" and expressly points out that the term does not include goods after their delivery into the actual physical possession of the ultimate consumer. If the material used in the construction of this plant might be considered "goods" the defendant using them in the plant and in the construction work was the ultimate consumer. However, I do not believe that such materials were intended by the Act to be considered as "goods".

Walling v. McCrady Construction Co., 3 Cir., 156 F.2d 932, 937, relied upon by the plaintiffs, involved the construction by way of repairs upon existing roads, bridges and additions to buildings. The Court in its opinion seems to me to definitely differentiate between old and new construction. It is pointed out that the improvements in question "are all integral parts of *existing* plants and that their purpose was to *continue* the operation of the plants, all of which are producing *goods* for interstate commerce." (Italics mine.)

Counsel for the plaintiffs refers the Court to the opinion of Judge Roy M. Shelbourne, of the Western District of Kentucky, in

the case of Brown v. Consolidated Vultee Aircraft Corp., D.C., 80 F.Supp. 257, 262. The facts of that case and the case at bar are so dissimilar that I cannot consider the Brown case as authority here. In the Brown case the employees were engaged in a "modification center" operated by the defendant company for the altering or modification of airplanes manufactured at other plants. Upon completion of the necessary alterations or modifications the planes were then flown to the various war centers throughout the world. The Court held that the defendant was engaged in the "production of goods for commerce".

Plaintiffs' counsel cites the case of Central Missouri Telephone Co. v. Conwell, 8 Cir., 170 F.2d 641, 643, as authority for granting the defendant's employees who were engaged as telephone operators the relief which they seek. A material difference in the facts between the instant case and the facts before the Court of Appeals for the Eighth Circuit in the Central Missouri Telephone Company case makes the Missouri case of little or no value here. In the Missouri case the appellate court states: "The answer admits that the parties named were employed by defendant as operators at the telephone exchanges alleged, admits that the defendant and the operators were engaged in interstate commerce, * * *." No admission of fact that the telephone operators engaged by the Rust Engineering Company were engaged in interstate commerce is found in this record and the facts do not warrant the Court in so finding.

Walling v. Patton-Tulley Transportation Co., 6 Cir., 134 F.2d 945, cited by plaintiffs' counsel, involved workers engaged in dike and revetment construction on the Mississippi and Missouri Rivers for an employer engaged in loading and transporting logs in which connection it maintained a fleet of boats used in interstate commerce. The purpose of the dike and revetment work was to direct and channelize these great rivers and to prevent erosion and to maintain the minimum depth required by commercial navigation in interstate commerce. The work was directly for commerce.

Clyde v. Broderick, 144 F.2d 348, from the United States Court of Appeals for the Tenth Circuit, is strong authority for the plaintiffs' position in the case at bar. It seems to be directly in conflict with more recent cases and was decided four years before the United States Supreme Court pronouncement in Murphey et al. v. Reed et al., 335 U.S. 865, 69 S.Ct. 105, where the district court was instructed to "dismiss those causes of action involving solely construction work".

On February 18, 1949, this same court in McDaniel v. Brown & Root et al., 10 Cir., 172 F.2d 466, 471, handed down an opinion in which it held to the contrary. In that opinion the Court used the following language:

"It is now well settled that employees engaged in the original construction of a new building or facility are not within the coverage of the Fair Labor Standards Act of 1938, even though the building or facility, when completed, will be used for the production of goods for commerce or as an instrumentality of interstate commerce.

"The reason for the rule is that since the new building or facility in the original construction of which the employee works has not yet been dedicated to use in the production of goods for commerce, although it may be intended to be so used when completed, such work does not have such a close and immediate tie to the production of goods for commerce as to bring such worker within the coverage of the Fair Labor Standards Act of 1938.

"While it is true that the Naval Depot, when completed, was to be used in a joint effort to win the war, to which other plants, depots, and facilities would make similar contributions the Naval Depot was in no proper sense an addition to an existing facility."

Plaintiffs' attorney cites throughout his brief a number of decisions involving the rights of employees of a war time cost-plus contractor engaged in producing munitions. It may be pointed out that the most recent cases along the line of counsel's reasoning include the opinion of the Fifth Circuit in Kennedy v. Silas Mason Co., 164 F.2d 1016. In that case the district court had found for the defendants and against the employees on a motion for summary judgment. See district court

opinion, 70 F.Supp. 929. The appellate court affirmed the lower court's decision.

The United States Supreme Court in Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, remanded the case to the district court "for reconsideration and amplification of the record" in the light of its opinion. The Supreme Court expressly stated that war contracts such as the one before it (a much stronger plaintiffs' case than the one at bar) presented issues of far flung import on which the "Court should draw inferences with caution". This opinion was handed down on May 17, 1948, and is the last statement of the Supreme Court, with one exception, that I can find on the question of the determination by that court of the issues related to those in the instant case. I consider that high court's opinion in this Kennedy case destroys any reliance on the cases cited by plaintiffs here.

The one exception referred to would seem to clearly indicate a view contrary to the plaintiffs here. The case of Reed v. Murphey, 5 Cir., 168 F.2d 257, held that employees of a construction company engaged in building a Navy camp, a naval advance depot and for the maintenance and operation of the advance depot were not engaged in commerce within the meaning of the Fair Labor Standards Act.

The Supreme Court, on November 15, 1948, in granting certiorari of the case of Reed v. Murphey, supra, said: "The petition for writ of certiorari is granted. The judgments below 168 F.2d 257 are vacated and the case remanded to the District Court with instructions to dismiss those causes of action involving solely construction work, and to reconsider the remaining causes of action in the light of the decision of this Court in Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031 [92 L.Ed. 1347]."

I am in full accord with the conclusions reached in a number of cases which seem to be directly in point for the defendants.

It seems to me that had Congress intended to make construction work on buildings and plants which were to manufacture goods to be shipped in interstate commerce within the scope of the Act it would have said so. No reasoning can interpret the language of the Act to include materials used in such construction as the "commerce" intended by the Congress or that those so locally engaged were employees of one "engaged in commerce or in the production of goods for commerce."

Judge Shackelford Miller, Jr., now of the United States Court of Appeals for the Sixth Circuit, while serving as District Judge in the Western District of Kentucky, had for determination the case of Wells et al. v. Ford, Bacon and Davis, Inc., 6 F.R.D. 606, 608. In a Memorandum Opinion which sets forth a similar case to the case at bar, the Court said:

"In order for the plaintiffs to recover under this claim, it is necessary that in addition to the defendant being engaged in commerce or in the production of goods for commerce that the plaintiffs themselves be also likewise engaged. Both the Administrative Construction of the Fair Labor Standards Act and the judicial decisions thereunder hold that employees of local construction contractors generally are not engaged in interstate commerce or in the production of goods for commerce. See Interpretative Bulletin No. 5 issued by the United States Department of Labor, Wage and Hour Division, Office of the General Counsel, Release No. R-113, December 2, 1938, Revised November 1939; Wage and Hour Letter October 22, 1941; Wage and Hour Opinion Letter March 7, 1941; Dollar v. Caddo River Lumber Company, D.C., 43 F.Supp. 822; Harbe v. Cummins Construction Co., D.C., 49 F.Supp. 168; Bracey v. Luray, D.C., 49 F.Supp. 821; Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. Defendant's motion to dismiss the First Claim is accordingly sustained."

Interpretative Bulletin No. 5, referred to in Judge Miller's opinion, states:

Section 12. "The question arises whether the employees of builders and contractors are entitled to the benefits of the Act. The employees of local construction contractors generally are not engaged in interstate commerce and do not produce any goods which are shipped or sold across

State lines. Thus it is our opinion that employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the buildings when completed will be used to produce goods for commerce. There may be particular employees of such construction contractors, however, who engage in the interstate transportation of materials or other forms of interstate commerce and are for that reason entitled to the benefits of the Act."

Section 13. "Employees of contractors engaged in maintaining, repairing or reconstructing railroads, ships highways, bridges, pipe lines, navigable waters of the United States, or other essential instrumentalities of interstate commerce would seem to be engaged in interstate commerce subject to the Act. And employees of contractors who are employed in maintaining, repairing, or reconstructing building or machinery used to produce goods for commerce would seem to be engaged in a 'process or occupation necessary to the production' of such goods within Section 3(j) of the Act, and, therefore, within the coverage of the Act."

▬ In this connection it might be pointed out that the so called Portal-to-Portal Act, 29 U.S.C.A. § 251 et seq., expressly provides that employers relying on interpretative bulletins of the Department can not be liable, for actions against them for such reliance. While my determination of this case is not based on this defense, I am of the opinion that the defendant established such defense.

Aside from this it is evident that the Administrator in the light of his knowledge of the progress of the legislation through the Congress considered such an interpretation as correct. To say the least, this is persuasive authority to bolster a conclusion in favor of such an interpretation.

In Reed v. Murphey, 168 F.2d 257, 260, the Court of Appeals for the Fifth Circuit had a similar question before it. The Court said:

"The 89 construction employees were shown to be engaged solely in local intrastate building activities throughout the term of their employment. It has been uniformly held that persons employed on such work are not 'engaged in commerce or in the production of goods for commerce' within the meaning and coverage of the Fair Labor Standards Act. Parham v. Austin Co., 5 Cir., 158 F.2d 566; Phillips v. Graham Aviation Co., 5 Cir., 157 F.2d 443; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633; Soderberg v. S. Birch & Sons Construction Co., 9 Cir., 163 F.2d 37; Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719; Scott v. Ford, Bacon & Davis, Inc., D.C., 55 F.Supp. 982."

The following is a quotation from Kelly v. Ford, Bacon and Davis, 3 Cir., 162 F.2d 555, 557:

"Plainly the erection of the factory for the Defense Corporation was new construction and as such not within the coverage of the Wages and Hours Act, 29 U.S.C.A. § 201 et seq. Walling v. McCrady Const. Co., supra; Wells v. Ford, Bacon & Davis, Inc., D.C.W.D.Ky. Dec. 31, 1943 [6 F.R.D. 606], affirmed, 6 Cir., 145 F.2d 240; Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633; Parham v. Austin Co., 5 Cir., 158 F.2d 566. And this is the interpretation generally followed by the Wage and Hour Division of the Department of Labor. Roland Electric Co. v. Walling, 1946, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334, and Pedersen v. J. F. Fitzgerald [Const. Co.], 318 U.S. 740, 742, 63 S.Ct. 558, 87 L.Ed. 1119, referred to by appellant, all had to do with repairs, replacement or extension of existing facilities."

In Scott v. Ford, Bacon and Davis, D.C., 55 F.Supp. 982, the rule is expressly laid down as a conclusion of law that an employee engaged in the construction of a factory is not engaged in "commerce" or the "production of goods for commerce" within the meaning of the Fair Labor Standards Act.

While I have addressed this Memorandum principally to one defense, I further believe that other defenses are well taken. The argument for the application of the Act to certain of the groups of plaintiffs might be stronger or weaker than others, However, I believe that none of them are subject to its benefits and have not, except

incidentally, separately discussed the individual groups as the case and the defense applies to them separately. The defense of De Minimus Non Curat Lex is not without merit. It is true that a part of the supplies and materials were shipped from other states and some of it reshipped out of Kentucky and as to checkers and those who actually handled the goods it would not be a defense. There is no breakdown that can give the Court any basis for finding what proportion was intra and what was interstate as to the nurses and telephone operators. The same is largely true of the typists and stenographers.

The plaintiff Louis E. Jones received more than $200.00 per month and was within the exception excluding those in administrative capacity. On the whole the plaintiffs have not sustained their case and the complaint should be dismissed with judgment for costs in favor of the defendant.

 We may recognize the fact that eventually the Commerce Clause of the Constitution, article 1, § 8, cl. 3, will be held to include almost every conceivable transaction since means of transportation, good roads and methods of communication steadily dim the imaginary line between states of the Union. Be this for good or ill, I believe it is a matter that addresses itself to the legislative branch of the Government and not a football for judicial philosophising. When Congress, as representatives of the people, wants to make local construction from material, tools and supplies shipped in interstate commerce an interstate transaction it will say so. The courts can then test such law for its constitutional limitations.

A judgment dismissing the complaint and awarding the defendant its costs is this day entered.

### Supplemental Opinion.

In addition to the authorities cited in the Memorandum Opinion of April 18, 1949, the recent case of Selby et al. v. J. A. Jones Construction Company, 175 F.2d 143, decided by the United States Court of Appeals for the Sixth Circuit on May 27, 1949, is authority for the conclusions reached by this Court.