**KELLY v. FORD, BACON & DAVIS, Inc.**

**Civ. A. No. 4784.**

District Court, E. D. Pennsylvania.

March 22, 1946.

Motion to Amend Denied May 31, 1946. Judgment Affirmed Aug. 7, 1947. See 162 F.2d 555.

Harry R. Kozart, of Philadelphia, Pa., for plaintiff.

Bell, Murdoch, Paxson & Dilworth, of Philadelphia, Pa., and Davies, Auerbach, Cornell & Hardy, of New York City, for defendant.

KIRKPATRICK, District Judge.

This is a suit brought under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover overtime pay together with the statutory penalty and attorneys' fees. The defendant-employer was engaged in building a factory for the manufacture of airplane engines, at Pottstown, Pennsylvania, and the plaintiff's employment had to do entirely with extra work orders for the construction project. He was hired at the plant site and did all of his work there, but contends that the character of his work was such that the Fair Labor Standards Act applied to him.

■ 1. The plaintiff was not engaged in production of goods for commerce.

It appears that the defendant, in addition to the contract relating to the construction of the plant, in connection with which the plaintiff performed substantially all his work, had an earlier contract with Jacobs Aircraft Engine Company dated May 22, 1941, which provided for the supervision by Ford, Bacon & Davis of the Jacobs Company's operations in manufacturing airplane motors, including consultant services covering policies, controls, organization, personnel and other management. It also appears that, as certain parts of the factory being constructed under the construction contract were completed, the Jacobs Company moved in and manufactured airplane motors in the completed portions. On one occasion Kelly did some work on extra work orders (the exact extent of which does not appear), in connection with the installation, or possibly the alteration, of a ventilating system in a portion of the building which had been completed and in which the Jacobs Company was carrying on manufacturing operations. This furnishes the only evidence on which the plaintiff can base a claim that he had anything to do with the production of goods for commerce. It is wholly insufficient to support any finding as requested by the plaintiff.

■ It was stipulated that the contract for supervision of operations "was in nowise connected with the contract for design and construction of the aircraft engine plant * * * which contract was for an independent consideration, and the work under which was entirely independent of the services provided for in the first contract of May, 1941. * * *" There is nothing whatever in evidence to show how much work the plaintiff did in connection with the ventilating system or of what it consisted or how much of the installation was considered an "extra" or how or with whom the work was contracted for. So far as appears, it may have accounted for a wholly insignificant part of the time which the plaintiff spent as an employee of

the defendant. In fact, it could hardly have been otherwise, when one takes into consideration the extensive operations being carried on by the defendant in the construction of the plant and the nature of the plaintiff's work in connection with them. Moreover, if it had been of any great importance, it is a fair assumption that the plaintiff would have developed it, the burden having been on him to bring himself within the terms of the Act.

2. Nor was the plaintiff engaged in commerce.

As mentioned above, it was stipulated that the plaintiff's employment was not in connection with the earlier contract for supervision of the Jacobs Company's operations by the defendant, but was in connection with the work being done under the contract for the construction of the plant—an entirely independent activity of the defendant. It is settled that original construction of a factory building is not interstate commerce even though the completed factory may be intended for the production of goods for commerce. The fact that the plaintiff's employment had to do entirely with construction work, which was not commerce, must be borne in mind.

It is, of course, the activities of the employee which control rather than those of his employer, but where the employer is engaged in commerce, then, if the employee's activities are an essential part of the business (commerce) the employee is engaged in commerce. Thus in Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, a rate clerk employed by a motor transportation company was held to be engaged in commerce and, for the same reason, many clerical employees, stenographers, mailing clerks and the like have been held engaged in commerce. On the other hand, where the employer is not engaged in commerce, we must look further than the relationship of the employee's activities to the business of the employer and determine whether the employee's individual activities are such that he is engaged in commerce himself.

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulations, are governed by the other phrase, 'production of goods for commerce.'" McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538. Under this test the mere fact that the plaintiff's duties may have affected or may have been indirectly related to interstate commerce does not make him engaged in commerce. It must appear that his duties were "actually in or so closely related to the movement of the commerce as to be a part of it." With this test in mind, we proceed to examine the character of the plaintiff's duties and their relation to commerce.

The plaintiff's duties in connection with the extra work orders were to ascertain the reasonableness and propriety of bids for such work, submitted by contractors and subcontractors and, in an undetermined number of instances, charges made by them for work already performed. To do this it was necessary for him to check the original contracts to determine if the item was a proper extra and, if not, to ascertain from his past experience and other sources of information, or, in the case of mechanical items, by reference to specialists, the propriety of prices quoted and the necessity for the quantity of material supplied. He did not order the material needed nor negotiate or let the contracts. Work of the type that he was doing is without doubt necessary in the construction of a large plant such as this, where plans are frequently altered and a great number of contracts and subcontracts are involved. It was essential to determine whether the work was covered by an existing contract and also whether charges were reasonable. If the plaintiff concluded that the charges were proper, he would draft the work order and have it approved by his superiors in the defendant's organi-

314

zation and the representatives of the Jacobs Company and of the Defense Plant Corporation.

The activities above outlined are not "in the movement of commerce" nor do I think that they are closely related to it. They indirectly affect commerce in that the plaintiff prepared the necessary detailed paper work and obtained the necessary information required by his employer in order that the latter might efficiently and economically . erect the factory and, of course, in erecting the factory, materials would in some cases be obtained from without the state. The plaintiff, after an order had been approved, would write a covering letter and enclose it with the work order, for mailing to the contractor or subcontractor who was to do or had done the work. As pointed out in the case of Collins v. Ford, Bacon & Davis, D.C., 66 F.Supp. 424, the mere writing of a letter which is mailed to a point outside the state is not in itself interstate commerce so that, unless these letters and work orders mailed beyond the borders of the state were so closely related to the movement of commerce as to be a part of it, their existence would not bring the plaintiff within the purview of the Act. See opinion in the Collins case, supra. Moreover, it is clear that the plaintiff did not spend a great deal of his time in the actual preparation of these letters and, as pointed out above, the work in connection with the work orders was not engaging in commerce.

Since the plaintiff was neither engaged in commerce nor in the production of goods for commerce, he does not come within the purview of the Act and it is unnecessary to discuss in this opinion the question whether he belonged to one of the exempt classes under the Act.

Judgment may be entered for the defendant.

.On Motion to Amend Findings.

This motion raises the single narrow question whether the plaintiff's work in collecting data, determining prices' and also processing other work orders and mailing orders across state lines was production of goods or engaging in commerce within the meaning of the Fair Labor Standards Act.

As pointed out in an opinion filed this day, sur reargument, in the case of Collins v. Ford, Bacon & Davis, 229 F. Supp. 71, the writing of letters is not, per se, the production of goods. Letters may be considered "goods" if they contain information which is sold, like any tangible article of commerce. I find no decision holding that letters sent across state lines as an incident of intrastate business are goods produced. Nor does the fact that the letters may have some influence upon an ultimate movement of goods across state lines by third persons for use in their own independent business make the employee who writes the letters engaged in commerce within the meaning of the Act.

The motion to amend the findings is denied.