**McCOMB v. TURPIN et al.**

**Civ. A. No. 4028.**

United States District Court
D. Maryland.

Nov. 30, 1948.

Wm. S. Tyson, Solicitor, U. S. Dept. of
Labor, of Washington, D. C., Ernest N.
Votaw, Regional Atty., U. S. Dept. of La-
bor, of Philadelphia, Pa., and Bernard J.
Flynn, U. S. Atty., of Baltimore, Md., for
plaintiff.

Herbert Levy, Levy, Byrnes & Gordon,
Charles C. G. Evans, and Marbury, Miller
& Evans, all of Baltimore, Md., for de-
fendants.

CHESNUT, District Judge.

The Administrator of the Wage and
Hour Division of the United States De-
partment of Labor seeks an injunction
against the defendants from further al-
leged violation of the Fair Labor Stand-
ards Act, 29 U.S.C.A. § 201 et seq. The

complaint alleges that the defendants have violated the Act (1) in failure to compensate their employees for work in excess of 40 hours per week at rates not less than one and one half times the regular rate at which they were employed; (2) failure to keep adequate records of the wages and hours of their employees; (3) and in shipping, delivering and selling goods in interstate commerce produced by employees in violation of the terms of the Act. In their answer the defendants deny that their activities or those of their employees subject them to the Act.

The facts of the case are contained in a stipulation. The defendants are engaged in the practice of professional or consulting engineers and architects with offices in Baltimore City, Maryland. Their work consists solely of consultation with specific clients with respect to engineering and architectural problems and the giving of advice and recommendations in the solution of such problems. In order to make their advices and recommendations clear to the client, drawings and specifications are in some cases prepared for his information and furnished exclusively to him. The original drawings are made on tracing cloth or paper and in some cases blueprints are made therefor for the defendants by an independent concern. The specifications prescribe what is to be done and the kind and quality of materials to be used. The clients usually obtain bids from various contractors for the work to be done, and, where competitive bids are received, defendants usually examine and tabulate them to determine the lowest bidder and to make further recommendations to the client pertinent thereto. Where the work to be done is local, that is, in or near the defendants' offices, in some cases they inspect the work and report its progress to the client. The defendants are paid fees for their services by the respective clients. The defendants do not buy or sell merchandise of any kind for incorporation in work to be done by the client. They have no inventory and engage in no construction work and have no connection with other persons, firms or corporations so engaged. The defendants have no prejudicial (personal) interest in any project either as owner, contractor or producer or seller of materials. They do not engage in competitive bidding with others for their professional services.

All the employees of the defendants (other than the secretarial employees and office boys) have a knowledge of the application to the art and science of construction, of mathematics, natural laws, engineering and architectural principles, in which they must have had special training and must be competent to perform creative work in the development of plans for the structures to be erected. The defendants are members of the American Society of Civil Engineers and of the Maryland Society of Professional Engineers.

The "Associates" of the defendants are five in number and are registered professional engineers or architects. In addition to these five Associates the defendants employ eighteen other specially trained persons. With respect to the present professional activities and services of the defendants, the stipulation lists the names of their present clients, and the nature and location of the respective projects. Their present clients are the Mayor and City Council of Baltimore; the State of Maryland; the Consolidated Gas Electric Light & Power Company of Baltimore, and one individual, a private client. All the projects for these clients are located in the State of Maryland and in or not far from Baltimore. The nature of the projects includes a swimming pool and dog kennels (for the private client); a sub-station for the Gas & Electric Company; survey of a power plant for the Maryland Penitentiary; alterations and additions to the State House and Court of Appeals Building in Annapolis; and some construction work with regard to sewers and bridges.

In addition, and within the past year, the defendants have performed professional services as engineers and architects for a number of clients whose projects were located in Pennsylvania, Virginia and some other States. The nature of such projects included a sewage treatment plant, alterations to a paint plant, designs for conveyor galleries in control towers, and similar engineering or architectural projects. All these projects have presently been com-

pleted; but the defendants do not intend in the future to limit their services to Maryland clients; nor to projects to be located only in this State. They hold themselves out to render professional services in connection with many kinds of structures and equipment whether for original construction or for alterations or additions, and whether the clients owning or operating said establishments are engaged in interstate commerce or the production of goods for commerce or not. Mostly their services relate to the original construction of buildings rather than to additions or alterations. The plaintiff has filed as exhibits illustrative of the defendants' drawings and specifications, a familiar type of blueprint for an engineering or architectural project, and a voluminous set of specifications for a client to be used by it for obtaining bids for a particular project; and also a report to a client, in the nature of an audit or appraisal of the value of work completed and still to be done by a contractor or sub-contractor.

After hearing counsel and a study of the stipulation and a re-reading of the principal relevant judicial decisions cited by counsel, I reach the conclusion of law that the defendants are not subject to the Act, the provisions of which are now so well known that it is unnecessary to re-state them in detail.

In considering the problem presented by this case, it is well to keep in mind some of the broader aspects of the Fair Labor Standards Act and the general principles enunciated by the Supreme Court as guiding beacons. Of course, in enacting this piece of legislation, Congress did not exhaust the full scope of its power under the commerce clause of the Constitution, art. 1, § 8, cl. 3, and the judicial decisions applying the Act to specific factual situations, must bear in mind the implications of our dual system of government. Kirschbaum v. Walling, 316 U. S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. The result of these considerations, as well as of the consideration which motivated the passage of this law, is that it is difficult, but nonetheless necessary, to resolve opposites, the solution of which is one of degree which must be judged by rational considerations rather than bordering cases. The solution cannot be all black or all white; necessarily it represents the rational selection of one of many closely related and almost imperceptibly distinguishable shades of gray. As the Supreme Court has stated, the judicial interpretation of the Act has involved the courts "in the empiric process of drawing lines from case to case, and inevitably nice lines." 10 E. 40th Street Building v. Callus, 325 U. S. 578, 579, 65 S.Ct. 1227, 1228, 89 L.Ed. 1806, 161 A.L.R. 1263.

With respect to required compensation of employees for work in excess of 40 hours a week, it will, of course, be remembered that the Act covers only those employees who are themselves engaged in interstate commerce or in the production of goods for commerce. *It is not contended in this case that any of the defendants' employees are engaged in interstate commerce,* but counsel for the plaintiff does contend that, although the so-called "Associates" are probably excluded from the coverage of the Act by reason of being *professional* employees, there are 18 or more other employees who are engaged in the *production of goods for commerce.* One of his contentions is that the mere preparation of the plans intended to be sent by mail, express or messenger to a client in another State, irrespective of the nature of the building or structure proposed to be constructed, constitutes production of goods for commerce. This can be true only if the definition of the word "goods" as contained in the Act is construed to cover the preparation of the plans, drawings and specifications referred to in the stipulation. The definition [§ 203(i)] defines "goods" to mean "goods * * * wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof". I do not think even this broad literal definition could fairly be construed to apply to the plans, drawings and specifications prepared by or under the supervision of the defendants or their employees. They are only a physical embodiment in words of professional conclusions. A short quotation from the opinion of Justice Holmes in Federal Base Ball Club of Baltimore v. National League

of Professional Baseball Clubs, 259 U. S. 200, 208, 209, 42 S.Ct. 465, 466, 66 L.Ed. 898, 26 A.L.R. 357, is also here apposite. The question there was whether baseball clubs were engaged in interstate commerce.

"That to which it is incident, the exhibition, although made for money would not be called trade or commerce in the commonly accepted use of those words. As it is put by the defendant, personal effort, not related to production, is not a subject of commerce. That which in its consummation is not commerce does not become commerce among the States because the transportation that we have mentioned takes place. To repeat the illustration given by the Court below, a firm of lawyers sending out a member to argue a case, or the Chautauqua lecture bureau sending out lecturers, does not engage in such commerce because the lawyer or lecturer goes to another State."

Certainly the word "goods" could not be construed to include professional advices and its definition should not be construed to include the typewritten or mechanical expression by which the advice is given. These plans, drawings and specifications are not themselves the subject of barter or sale, but only the written embodiment of professional advice, and incidental thereto. They are specifically prepared to meet the particular problem of a specific client and are not sold or offered for sale to the public generally. They are, of course, quite unlike stocks, bonds and commercial paper which are themselves instrumentalities of commerce. Bozant v. Bank of New York, 2 Cir., 156 F.2d 787. This distinction was well made by Circuit Judge Learned Hand in the case just cited, 156 F.2d at page 789 as follows:

"Some of the activities which went on, we agree, should on no theory be counted. A lawyer who in the course of his practice writes letters, or draws deeds or wills, or prepares briefs and records, is not on that account within § 203(j); and the same is true of the correspondence of a broker and of a banker. The definition of 'goods' in § 203(i) might literally go so far even as that; but it would be unreasonable to the last degree to suppose that Congress meant to cover such incidents of a business whose purpose did not comprise the production of 'goods' at all."

A case even more important factually is Callus v. 10 East 40th Street Building, D. C., S.D.N.Y. 1943, 51 F.Supp. 528, in which the District Court found (51 F.Supp. at pages 529, 530) that employees of engineering firms, tenants in a building, who prepared plans and sketches for construction projects located in various parts of the United States and foreign countries, were not engaged in the production of goods for commerce and on this point, although the Court of Appeals reversed on other grounds, it said 2 Cir., 146 F.2d 438, 440:

"It is clear, we think, that the investment, finance and credit organizations, the engineering and construction firms, as well as the lawyers * * * are not engaged in the production of goods for commerce." (Reversed by Sup.Ct. 325 U. S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263, on other grounds.)

Again in Collins v. Ford, Bacon & Davis, Inc., D.C.Pa. 1946, 71 F.Supp. 229, 230, the District Judge said that—

"Plans, designs and letters by which information is transmitted can be considered 'goods' only when the plans themselves or the information contained in the letters is the thing which the employer sells and his customers buy."

See also Kelly v. Ford, Bacon & Davis, D.C., 71 F.Supp. 311, 314, affirmed 3 Cir., 162 F.2d 555. In the very recent case of Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729, 732, the plaintiff employee was engaged as a draftsman in a New York office of engineers preparing plans for a government "base" in Greenland which might be usable for commercial as well as military purposes. It was held that the plans did not constitute goods within the definition. Circuit Judge A. N. Hand said:

"Plaintiff next contends that his work at the New York office in the preparation of plans sent for use to the Greenland base and to other states constituted his engagement in the production of goods for commerce. In our opinion this work cannot be so considered since the use of these plans by defendants was merely incidental

to the performance of their local construction contract in Greenland. Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Kelly v. Ford, Bacon & Davis, supra; Collins v. Ford, Bacon & Davis, Inc., D.C. E.D. Pa., 66 F.Supp. 424, decision on rehearing 71 F.Supp. 229. The making of these plans was not the objective undertaken by the defendants, nor did they sell them as 'goods,' but only used them for the transmission of information in the performance of their construction contract which we have already held was not engagement in commerce."

Cf. Baldwin v. Emigrant Indus. Savings Bank, 2 Cir., 1945, 150 F.2d 524, 161 A.L.R. 1234, certiorari denied 326 U.S. 767, 66 S.Ct. 171, 90 L.Ed. 462, with respect to the preparation of advertising matter as the production of goods; and also Darr v. Mutual Life Ins. Co. 2 Cir., 1948, 169 F.2d 262, certiorari denied 69 S.Ct. 166, with respect to the preparation of life insurance policies.

In Western Union Tel. Co. v. Lenroot, 323 U. S. 490, 502, 65 S.Ct. 335, 341, 89 L.Ed. 414, it was held that telegrams were goods within the definition of the Act because they were "subjects of commerce". But that case does not apply here because the facts show that the plans and specifications are not sold or otherwise dealt in as "subjects of commerce". That case is inapplicable here for the further reason that the Court's holding that telegrams were goods was obviously and properly based on the relationship of the message to Western Union; in that view, considering the function of Western Union, a message is a unit of work, rather than an idea. Certainly as to the author of the message, it is an idea or advice and not goods or a unit of work. Similarly, an artistic or literary contribution to a newspaper is certainly not goods insofar as the author is concerned, but it is clear that insofar as the publisher of the newspaper is concerned the newspaper is goods within the meaning of the Act. Mabee v. White Plains Pub. Co. 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607. See also, Berry v. 34 Irving Place Corp., D.C.S.D.N.Y., 52 F.Supp. 875; Walling v. Sun Pub. Co., D.C.W.D.Tenn., 47 F.Supp. 180, affirmed, 6 Cir., 140 F.2d 445, certiorari denied 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564. While it is said that the Administrator at one time expressed the official opinion that plans and specifications of the kind involved constituted goods within the definition, it does not appear from the last Interpretative Bulletin of the Administrator (July 1947, 12 F.R.D. 4583) that the interpretation of the Administrator now goes so far. Even if that is still the opinion of the Administrator, I think the judicial decisions previously cited are authoritative and also more convincing.

As it is not contended by the plaintiff that the defendants' employees are engaged in interstate commerce, we have no need in this case to consider such cases as Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316, and Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 156 F.2d 334, to the effect that so-called "white collar" workers performing substantial services in matters of interstate commerce are within the coverage of the Act. The plaintiff's concession that the employees are themselves not engaged in interstate commerce flows naturally from the decision of the Supreme Court in McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538, holding that a cook employed to serve food to railroad employees was not engaged in commerce although there had been decisions in some lower courts to the effect that cooks employed in logging camps to prepare meals for employees in the logging camps were engaged in the production of goods for commerce. And counsel for the plaintiff points out that there is a distinction to be made between the coverage of the Act with respect to employees engaged in interstate commerce and those engaged in the production of goods for commerce by reason of the broad definition in the Act of "production" (shortly to be noted) without a similar expanding definition of "commerce". Although the test as to the coverage of the Act is the nature of the activities of the employees rather than that of the employer, it is legally difficult to see how employees could be engaged in either interstate commerce or the production of goods for commerce unless the employers were so engaged. Wilson v. Reconstruc-

tion Finance Corp., 5 Cir., 158 F.2d 564, 565. Of course the converse may readily be true.

Counsel for the plaintiff next advances a broader proposition. His contention is that the defendants' 18 employees above referred to are engaged in the *production of goods for commerce* whenever the plans, drawings and specifications are sent by the defendants by mail, express or messenger to a client in another *State* whether the project to which they relate involves the original construction of a new building or the alteration of an old building, and whether the building itself is or is not engaged or to be engaged in the production of goods for *interstate* commerce. And with respect to projects in Maryland for local clients, his contention is that the employees are engaged in the production of goods for commerce if the project itself is for *additions to or alterations* in a building *already in use for interstate commerce,* or if the project relates to public highway construction as, for instance, a bridge over a creek, or paving for an airport.

Counsel for the Administrator seeks support for this contention in the definition of the word "produced" contained in § 203(j) of the Act which reads as follows:

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any process or occupation necessary to the production thereof, in any State."* (Italics supplied.)

Particular emphasis is placed on the italicized phrase, the most important word of which in its application to the instant case is the word "necessary". Thus the question here to be decided comes to this. Is the work of the defendants' employees "necessary" to the production of goods for commerce? The word is a relative adjective and there is required careful consideration of the facts and circumstances of the particular situations to which it is to be applied. In the instant case it is sought to be applied to characterize the activities of the defendants' employees in their relation to certain classes of buildings or construction work. The stipulation of facts furnishes only meager information as to the building or construction work. Many of the projects so listed obviously had no relation whatever to interstate commerce or the production of goods for commerce; as, for instance, a swimming pool and dog kennels; and repairs or alterations to various buildings owned by the State of Maryland. Other projects listed have relation to alterations or additions to buildings which, so far as the stipulation goes, may or may not be used for the production of goods for commerce. But some, more particularly emphasized by the plaintiff, apparently comprehend projects or other construction work on State highways, or paving and mechanical utilities for a municipal airport. There is, however, no particular or detailed information furnished as to the precise nature and character of such construction work, or to what extent it may be necessary for interstate commerce. Nor does the stipulation afford information as to what proportion of the projects on which the defendants have recently been or are now engaged, relate either directly or indirectly to interstate commerce or the production of goods for commerce. However, I will assume that it was the intention of the parties in preparing the stipulation to have it considered that the defendants, as consulting engineers or architects, may either now or hereafter be engaged for professional services with respect to advice, plans and specifications for bridges on Maryland State highways entirely within the State (not stated to be over navigable waters) and for the original construction or alterations or additions to existing buildings, which may be now or hereafter used for the production of goods for interstate commerce. But even if so considered, it is my view that the Act does not cover or apply to the specially trained employees of the defendants who assist them in the preparation of plans and specifications for such work.

As heretofore noted, the Act covers only those employees who are engaged in interstate commerce or in the production

of goods for commerce. The plaintiff does not contend that they were engaged in interstate commerce. With respect to construction work on State highways, the Act seems clearly not to cover these employees because it is not contended that they were engaged in interstate commerce and clearly their activities with respect to such duties could not be considered in any way as the production of goods for commerce. Possibly it could be said that the construction work on highways tended to facilitate the interstate *transportation* of goods; but certainly not the *production* of goods. It thus seems that the question is narrowed to whether the preparation of plans and specifications for an original building, or additions or alterations therein, which may be used for the production of goods for commerce, constitutes an activity by the employees in an occupation "necessary" to the production of such goods.

■ Of course, from common knowledge it may be assumed that plans and specifications are necessary to the construction of or substantial change in a building to be used as a factory. But it is obvious that such work is purely preparatory to the actual work of construction and is a guide to the performance of that work but is not a part of the work itself. If we read the words of the Act itself and especially the Congressional finding and declaration of policy (§ 202), and then read the words of § 207 applicable to compensation of employees for overtime work (covering in this case only those employees who are engaged in the production of goods for commerce) and then further read the definition of the word "produced" (203(j)), it seems clear that the intent of Congress was to provide maximum hours of work for those working employees who were *closely* and not *remotely* engaged in the production of goods for commerce. The work of these particular employees was highly local in character and their activities in distance far removed from the buildings or structures for which they assisted in preparing plans. In no sense could they be said to be co-workers either with the employees of the contractor for the building work or with the workers who might thereafter be employed in the building. Again,

the nature of the work performed by the defendants' employees was mental rather than manual and of a professional rather than a commercial character. We are not presently concerned with the question as to whether they were exempt from the Act because employed in a bona fide professional capacity (§ 213), (See Aulen v. Triumph Explosives, Inc., D.C.Md., 58 F. Supp. 4), but in consideration of the present question as to how necessary their activities were to the production of goods, we may properly look to the nature and character of their work.

The proper construction and application of the Act has been considered in very numerous federal judicial decisions. It is necessary to consider the problem in the light of the authoritative decisions of the Supreme Court to the extent that they are applicable here by reason of similar facts or established principles. Four comparatively recent cases in the Supreme Court deal with the application of the phrase in the definition above quoted, that is, "in any process or occupation necessary to the production thereof, in any State." They are Kirschbaum v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Borden Co. v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258; 10 E. 40th Street Building v. Callus, 1945, 325 U.S. 578, 579, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263; and Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. See also Martino v. Michigan Window Cleaning Co., 327 U.S. 173, 66 S.Ct. 379, 90 L.Ed. 603. Although none of these cases involved a factual situation comparable to the present case, the opinions do outline the proper judicial approach to the answer to the question. The Kirschbaum, Borden and Callus cases all involved the question whether service and maintenance employees in a large building were engaged in an occupation necessary for the production of goods for commerce in that building. In Kirschbaum, supra, the whole building was devoted to manufacture for commerce; and in Borden, supra, the building was owned by an interstate producer and predominantly occupied by his offices. In both cases it was held the employees of the office building were

covered by the Act. But in the Callus case the court reached the contrary conclusion where a very large office building was owned by a company not engaged in commerce of any kind although a very substantial portion of the building was rented by tenants who were engaged in interstate commerce. In the Roland case the employees held covered by the Act were employed by an electrical company engaged in commercial and industrial wiring, electrical contracting and dealing in electric motors and generators for private and industrial use. The employees were very substantially occupied in the repairing of motors and generators and in performing electrical work for customers of their employer, very many of whom were engaged in interstate commerce. The new point of the case seems to have been that employees who do necessary construction or repair work on equipment used for the production of goods for commerce are covered by the Act although they are employees of an independent contractor.

It will have been noted that in each of these four cases the employees who were held covered were those who were personally and physically engaged in performing services which were necessary for the production of goods for commerce or in work on machinery or other instrumentalities which were required for the production of goods. None of the cases involved the status of employees who were so remotely related to the ultimate production of goods as the employees in the instant case who had no part either in actual production of the goods themselves or the instrumentalities related thereto, and whose only relation to the production of goods was the mental work of preparing plans and specifications for buildings or structures in which goods for commerce might afterwards be produced. Counsel have not cited nor have I found any federal decision that has extended the coverage of the Act to employees having activities similar to those in the present case, unless the conditions warranted the conclusion that they were engaged in interstate commerce.

There are, however, some federal appellate decisions which strongly point to the contrary conclusion as applied to this case.

In Parham v. Austin Co., 5 Cir., 158 F.2d 566, and Noonan v. Fruco Construction Co., 8 Cir., 140 F.2d 633, it was held that employees of a contractor who is engaged in constructing a factory are too remotely connected with the ensuing production of goods in that factory to be covered by the Act. See also to the same effect Nieves v. Standard Dredging Corp., 1 Cir., 152 F.2d 719; Kelly v. Ford, Bacon & Davis, 3 Cir., 162 F.2d 555; Wells v. Ford, Bacon & Davis, D.C., 6 F.R.D. 606, affirmed 6 Cir., 145 F.2d 240; Laudadio v. White Const. Co., 2 Cir., 163 F.2d 383; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729, 732. Cf. Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932, certiorari denied 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673, on different facts. And it is noted in the Parham and Noonan cases that the Administrator has himself expressed the opinion that "employees engaged in the original construction of buildings are not generally within the scope of the Act, even if the building when completed will be used to produce goods for commerce." [158 F.2d 568.] See also Murphy v. Reed, 1948, 69 S.Ct. 105. It seems obvious that if, as was held in the cases just above cited, employees of a contractor constructing a factory are too remotely connected with the ensuing production of goods in that factory to be within the Act, then draftsmen employees of an independent consulting engineer who furnishes advice and plans for the construction of a building are even more remotely connected with the subsequent production of goods in that factory. See Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729, supra.

While the Administrator has ruled that employees engaged in the original construction of a building are generally not within the Act, he has made a distinction with respect to employees engaged in work on a factory building already in use for the production of goods for commerce. The basis of the distinction seems to be that the original building may never in fact be used for the production of goods; while the existing building is already devoted thereto. And it appears that some judicial decisions give support to this view. Then again, a further distinction is made be-

tween mere repairs to an existing plant and new additions thereto. See Scholl v. Mc-Williams Dredging Co., 2 Cir., 169 F.2d 729, supra. The stipulated facts in this case do not furnish sufficient information to determine whether the projects listed are to be properly classified as new additions or repairs; although my inference from the meager description given is that they seem to relate to additions rather than repairs. As the parties have submitted the case on the basis of stipulated facts, I think no affirmative finding could fairly be made that these employees within ninety days past have been engaged in preparing plans for mere repairs to an existing factory building then presently used for the production of goods. Moreover, as shortly to be stated, their activities are too remotely related to the projects to subject them to the coverage of the Act. As the plaintiff is seeking an injunction it would not be permissible to base a decision on the mere possibilities of the nature of the future engineering or architectural projects. And in this connection it is important to bear in mind that the plaintiff does not contend that the present employees are engaged in interstate commerce as "white collar" workers. The proper test there would be not whether the employees' activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of commerce as to be a part of it. Laudadio v. White Const. Co., supra.

As the Supreme Court has pointed out in the Kirschbaum and Callus cases, supra, the proper application of the phrase "occupation necessary to the production" of goods for commerce requires the particular consideration of the facts of each case and inevitably by the process of inclusion and exclusion has necessitated some judicial distinctions. Whether a particular case falls within or without the coverage of the Act must be determined upon a careful consideration of all the relevant facts and circumstances. As Mr. Justice Frankfurter said in the Callus case, 325 U.S. at page 582, 65 S.Ct. at page 1229, 89 L.Ed. 1806, 161 A.L.R. 1263:

"In giving a fair application to § 3(j), the courts must remember that the 'neces-sary' in the phrase 'necessary to the production' of goods for commerce 'is colored by the context not only of the terms of this legislation but of its implications in the relation between state and national authority.' * * * we cannot 'be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states.' We must be alert, therefore, not to absorb by adjudication essentially local activities that Congress did not see fit to take over by legislation. * * *

"Mere separation of an occupation from the physical process of production does not preclude application of the Fair Labor Standards Act. But remoteness of a particular occupation from the physical process is a relevant factor in drawing the line. Running an office building as an entirely independent enterprise is too many steps removed from the physical process of the production of goods. Such remoteness is insulated from the Fair Labor Standards Act by those considerations pertinent to the federal system which led Congress not to sweep predominantly local situations within the confines of the Act."

And the opinion, (325 U.S. 578, at page 584, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263) finally points out that in drawing the line between coverage and non-coverage it must be determined whether the questioned activities of the employee have a sufficiently *close and immediate* tie with the process of production to be covered, or only so remotely connected therewith as to be without the coverage of the Act.

In following this approach to the question we find in this case that the work of the employees does not have this required close and immediate tie with the production of goods. Their work is highly local in character being all performed in an office building in Baltimore, far removed in space from the projects to which their work relates. It is even more remote in its causal relation to the production of goods. Goods intended for interstate commerce can only be produced either manually or mechanically. These employees in no way touch goods so to be produced. Their work relates only to the preparation of plans and

specifications for a building or other construction work. The building or structure so planned for may or may not thereafter be built. If built, it may or may not be used for the production of goods for interstate commerce. If used for the production of such goods the buildings themselves are merely housing for manual and/or mechanical work by which the goods are produced. To the extent that machinery or other processes of manufacture are used, these employees have no part whatever therein. Men and machines are doubtless necessary to the production of goods in a factory and the factory building is doubtless necessary to house the men or machines and the plans may be necessary for the construction or alteration of the building; the activities of the employees in preparing the plans may be said to be necessary to the comprehension of the architectural or engineering advice; but it seems clear that the employees' activities are only very remotely related to the production of the goods.

The activities of the employees in this case, therefore, are not within the coverage of the Act because not within the "mischief" to be remedied by the Act; nor within the positive wording of the Act, and not within the principles of proper application of the Act as announced in the authoritative decisions of the courts. As the facts are contained in a written stipulation filed in the case, no separate findings are required and indeed would be only surplusage.

For these reasons I conclude that the complaint must be dismissed and judgment entered for the defendants. Counsel may submit the appropriate order in due course.