James P. MITCHELL, Secretary of Labor, U. S. Department of Labor, Plaintiff,

v.

Kenneth R. BROWN, doing business as Brown Engineering Company, Defendant.

Civ. A. No. 2–318.

United States District Court, S. D. Iowa, Central Division.

Nov. 10, 1954.

William C. Cull and Harper Barnes, Kansas City, Mo., for plaintiff.

Edgar Musgrave, Gerald O. Patterson, and Peter W. Janss, Des Moines, for defendant.

RILEY, District Judge.

This proceeding involves the coverage of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq. Plaintiff claims defendant to be within its coverage and asks a permanent injunction to enjoin and restrain defendant and others acting or claiming to act in his behalf and interest, from violating the provisions of the Act.

Defendant is engaged in the business of a professional consulting engineer, with offices in Des Moines, Iowa. He makes available to what are termed his clients, his professional services, which among other things include the development of drawings, working plans, specifications and estimates pertaining to the projects in which his clients are interested and concerning which they seek his professional advice and services. These plans and specifications and drawings remain defendant's property. Defendant does not engage in the construction or reconstruction, enlargement or extension of facilities alleged by plaintiff to be used in the production of goods in interstate commerce. In some instances, after the construction contract is awarded, defendant or his employees supervise the construction to determine whether it is in harmony with the plans and specifications, and certify estimates as a further service.

The parties have entered into a written stipulation, with a supplemental stipulation, as to all the facts, which, while accepted as an agreed statement, is objected to by defendant as irrelevant and immaterial because of the denial as to coverage of the Act. The court desires parenthetically to commend counsel for having developed this stipulation and, too, because they were able, with no small expenditure of their time, so to stipulate their facts as to require at trial only the oral argument supplemented by their written briefs.

It may contribute to a better understanding of this opinion to quote paragraph I of the stipulation.

"I.

"The defendant, Kenneth R. Brown, doing business as Brown Engineering Company, is engaged in the practice of a professional or consulting engineer with offices in Des Moines, Iowa. His work and that of his associates consist solely of consultation with municipalities, associations, corporations, partnerships and individuals (hereinafter referred to as client or clients) with respect to engineering and architectural problems and the giving of advice and recommendations in the solution of such problems. All of his employees, except for secretarial and bookkeeping employees, have knowledge of the application to the art and science of construction, of mathematics, of natural law, engineering and architectural principles in which they have had special

training and must be competent to perform creative work in the development of plans for structures to be erected or remodeled or for the installation of machinery therein as the case may be. The defendant is a member of the American Society of Civil Engineers and of the Iowa Engineers Society."

The stipulation then discusses different projects for which defendant's services were utilized, a survey made, plans and specifications prepared, and describes the manner in which the projects are operated or utilized as related to intrastate and interstate commerce. It was also stipulated that if the Act applies to defendant and his employees, the overtime provisions were violated.

Plaintiff contends that the employees of defendant, who performed some or all of the services and acts as described, are entitled to the benefits of the Act because they were engaged either in interstate commerce or in the production of goods for such commerce. Defendant categorically denies both contentions.

Counsel for both parties have furnished comprehensive briefs, quoting the authorities which they believe to control this situation. No attempt will be made to discuss and differentiate all the authorities cited by counsel. In 10 East 40th St. Bldg. v. Callus, 325 U.S. 578, 584, 65 S.Ct. 1227, 1230, 89 L.Ed. 1806, it was said:

"On the terms in which Congress drew the legislation we cannot escape the duty of drawing lines. And when lines have to be drawn they are bound to appear arbitrary when judged solely by bordering cases. To speak of drawing lines in adjudication is to express figuratively the task of keeping in mind the considerations relevant to a problem and the duty of coming down on the side of the considerations having controlling weight. Lines are not the worse for being narrow if they are drawn on rational considerations."

Plaintiff urges several propositions upon the court, among them being that employees who prepare plans and specifications which will be sent to places in other states are engaged in the production of goods for interstate commerce; that employees who perform services in connection with contracts, plans and specifications which call for goods which must be fabricated to order by manufacturers in other states, are engaged in interstate commerce, and in the production of goods for interstate commerce. Plaintiff breaks the projects down into different categories which, it is claimed, because of the relation of these projects to interstate commerce, cause defendant's employees to be engaged in interstate commerce as to some projects, and in the production of goods for interstate commerce as to others.

Plaintiff places reliance on the opinion of the Ninth Circuit in Ritch v. Puget Sound Bridge & Dredging Co., Inc., 156 F.2d 334, which was an action by employees to recover from their employers overtime payments under Sec. 207 of the Act. The defendants were private dredging contractors engaged in the dredging of two channels in the harbor of Bremerton Navy Yard and in the navigable waters of Puget Sound. Of the plaintiffs, five were draftsmen engaged in designing and laying out the work to be done by others, in the contracted dredging and dredging plant on the pier with its retaining walls. Three were timekeepers for all the workers on the project. The court said at page 337:

"In our opinion they were as much engaged in the construction of the channels inward from Puget Sound and the retaining walls and dredging installation on the pier to keep open the channels and berths as were the men dredging the channels and berths, the cement men working on the retaining walls and the mechanics installing the permanent dredging apparatus on the pier—all pursuant to the drafts-

men's plans and the time kept by the timekeepers. Since such work is in commerce, the men so actually engaged in it are in commerce and entitled to time and a half pay for their admitted overtime work."

This court can have no quarrel with that determination. The lines there drawn "are drawn on rational considerations." On equally rational considerations is the decision in Western Union Tel. Co. v. Lenroot, 323 U.S. 490, 65 S. Ct. 335, 89 L.Ed. 414, which holds that telegraph messages are goods. The Western Union case recognizes that long ago telegraph lines extending through different states were held to be instruments of commerce, and messages passing over them were held to be a part of the commerce. To discuss whether or not messages passing over interstate telegraph wires, or over no wires at all, between states, is a part of interstate communication, would appear as academic as to debate whether trains passing on their rails between states were in interstate transportation. But the fact that telegraph messages, which are an integral part of interstate communication, are held to be goods, does not have the effect of making defendant's plans and specifications goods within the meaning of the Act.

Plaintiff relies on Powell v. U. S. Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017, which holds that munitions produced were "goods" within the meaning of the Act, but it is not a sequitur that plans and specifications must be for that reason "goods." Here again we should focus "on the terms in which Congress drew the legislation." In the Powell case the writer of the opinion points out that the Fair Labor Standards Act of 1938 was said by its sponsor to be intended to carry out suggestions made by the President in his message to Congress. In the quotation from that message, at page 516 of 339 U.S., at page 765 of 70 S.Ct., the President was quoted thus:

"to protect the fundamental interests of free labor and a free people we propose that only goods which have been produced under conditions which meet the minimum standards of free labor shall be admitted to interstate commerce. Goods produced under conditions which do not meet rudimentary standards of decency should be regarded as contraband and ought not to be allowed to pollute the channels of interstate trade."

The Act itself said, Sec. 2(a):

"The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; * * *."

The beneficent purposes of the Act were stated "in bold and sweeping terms. Breadth of coverage was vital to its mission. Its scope was stated in terms of substantial universality amply broad enough to include employees of private contractors working on public projects as well as on private projects. Where exceptions were made, they were narrow and specific."

This court agrees with the writer of the opinion in the Callus case, supra, that "for drawing the figurative line the basis must be something practically relevant to the problem in hand."

The question was fully and ably discussed in McComb v. Turpin, D.C., 81 F. Supp. 86, by District Judge Chesnut of Maryland. It would unduly extend this opinion to quote the pertinent parts. Significantly, the defendants were engaged in the practice of professional or consulting engineers and architects, with offices in Baltimore, Maryland. Their work falls within the description of the work of the defendant as stipulated here. The only question that was raised was

whether the employees were engaged in the production of goods for commerce. The opinion states that it is not contended in that case that any of the defendant's employees are engaged in interstate commerce. This court adopts its reasoning as the basis of its own determination that the activities of the defendant and his employees do not cause them to be engaged in the production of goods for commerce.

Plaintiff insists, however, that whether engaged in the production of goods for commerce, the employees of defendant are in interstate commerce, and cites authority which he claims sustains that proposition. This court must find that, for the reasons stated in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, the employees are not engaged in commerce. It is there said, 319 U.S. at page 497, 63 S.Ct. at page 1251:

> "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it."

Counsel for both parties discuss Collins v. Ford, Bacon & Davis, Inc., D.C. Pa., 71 F.Supp. 229, and Kelly v. Ford, Bacon & Davis, Inc., 3 Cir., 162 F.2d 555. The Collins opinion supplements 66 F. Supp. 424, between the same parties. (Plaintiff here refers to defendant in each of the cited cases as "a construction contractor." Ford, Bacon & Davis, Inc., was in fact a construction engineering corporation engaged in all three cases in supervising the construction of a plant.) In 66 F.Supp. it was held that though the original construction of the factory building did not constitute interstate commerce and defendant was therefore not engaged in commerce in his employment at the plant site, the Act would apply if plaintiff was himself engaged in commerce and the other requisite conditions prescribed by law and the regulations were present. It was stated, page

426: "It is not suggested that plaintiff is engaged in the production of goods." In 71 F.Supp. 230, the court reopened the matter to permit plaintiff to file a supplementary affidavit addressed to that point. This affidavit related to plaintiff's activities "in the preparation of plans which contemplated or resulted in the purchase, by the defendant, of materials, equipment or apparatus to be shipped to it from points outside of Pennsylvania." The court held:

> "the business of the employer being intrastate, the preparation of plans and the writing of letters, as a result of which persons other than the employer procure materials outside the state and ship them into Pennsylvania for use in performing their own independent contracts, constitute neither the production of goods for commerce nor engaging in commerce within the meaning of the Fair Labor Standards Act."

The court then went on to hold that plans, designs and letters were not goods where they are incidental to carrying on an intrastate business, "even though they may have something to do with ultimately moving goods in commerce.

> "Nor is the employee engaged in commerce under the test adopted by the Supreme Court in McLeod v. Threlkeld, supra."

This court adopts that view.

In the Kelly case, supra, it was urged that irrespective of whether the defendant employer was engaged in commerce or in the production of goods therefor, plaintiff was so occupied because of the nature of his own position. Plaintiff here seeks to adopt that reasoning as to the employees of the defendant in the case at bar. The Third Circuit Court of Appeals said in the Kelly case at page 558 of 162 F.2d:

> "Plaintiff's individual activities are the test of whether he has the 'immediacy of participancy' in interstate commerce as to bring him within the 'in commerce' clause of the Act.

\*  \*  \*  \*  \*  \*

"So while the plaintiff may have collaterally affected the movements of the materials and equipment we do not consider that it is within the contemplation of the Act to say that what he did bore the necessary close tie to commerce called for by the decisions."

This court recognizes that it has had to draw the lines referred to in the Callus case, above, and that plaintiff contends that these bordering cases and others leave no choice but to find the defendant and his employees within the coverage of the Act. The case at bar does not appear to this court to be a borderline case. The connection between what this defendant and his employees do in defendant's primary intrastate operation as a professional consulting engineer, with the activities of defendant's clients as collaterally affecting interstate commerce, is too tenuous to bridge the gap between the two for any practical or rational purposes. The effect of defendant's activities and those of his employees in commerce is too far removed from his main activities to have more than a remotely incidental effect. It is by no means so closely related as to be for all practical purposes an essential part of interstate commerce.

The court adopts as its findings of fact in this case the stipulation as supplemented and agreed upon by the parties and makes the same a part of this opinion by this reference. In lieu of separate conclusions of law to meet requirements of Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A., the court adopts those that are contained in this opinion.