James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

J. Edward KROUT and Sam A. Schneider, individually and doing business as Krout and Schneider, Defendants.

No. 34331.

United States District Court
N. D. California, S. D.
May 16, 1957.

Kenneth C. Robertson, Office of the Solicitor, U. S. Department of Labor, San Francisco, Cal., for plaintiff.

Pillsbury, Madison & Sutro, L. F. Kuechler, Leigh M. Miller, San Francisco, Cal., for defendants.

HARRIS, District Judge.

This is an action brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act (29 U.S.C.A. § 217). He seeks to enjoin defendants from violating the overtime, record-keeping and shipment provisions of the Act.

The essential facts were the subject of stipulation, entered of record at the time of the hearing. In addition, one of the defendants, Mr. Schneider, offered himself as a witness.

Defendants operate an investigative agency. They maintain a principal office in San Francisco and smaller branch offices in Los Angeles and Fresno, California, Portland, Oregon, and Seattle, Washington. They employ fifteen to twenty-five field investigators in San Francisco, four to seven in Los Angeles and one to three out of their other offices. Their clerical staff consists of three employees in San Francisco and one in Los Angeles. San Francisco is the hub of their activities and all matters are cleared through this office.

Under defendants' mode of doing business, investigators perform work in excess of forty hours per week without receiving fair labor standards' additional compensation for the excess hours. Defendants do not maintain records of the daily or weekly hours worked by their clerical employees.

Defendants perform surveillance and investigative work. Their employees obtain evidence requested by their clients or customers. Much of the evidence pertains to the investigation of accidents and consists of interviewing witnesses, examining public records, observing individuals and their activities, etc. The customers themselves may use the information collected in order to settle claims, prepare for trials, adjust marital matters, etc. The investigators set forth their material in such a manner as to prepare themselves for testifying at trials or other hearings.

Defendants conduct their business in the following manner: The investigator upon completing his work, prepares a summary which he submits orally or in writing to the office manager in San Francisco or Los Angeles. This summary is revised and edited by defendants. It is then typed and prepared by the clerical employees. Defendants send the completed report to the customer. Investigators do not themselves prepare final reports nor send them to customers. Except for San Francisco and Los Angeles all investigators mail summaries to the San Francisco office where the final reports are prepared and then mailed to customers.

Of the numerous customers for whom defendants do their work many are insurance companies or self-insured business firms. Defendants derive somewhat

more than half of their income from such investigations. The insurance companies in many instances have out-of-state offices and mail the reports to the home office. For the year 1953 approximately 11½% of defendants' reports were transmitted by the local branch to the home office.

Defendants contend that plaintiff has misconstrued and misapplied the Fair Labor Standards Act in attempting to extend its language to the manner in which they conduct their business. They point out that they operate a local investigative business for a local purpose. San Francisco is the locale of their major functions. Their branches, under control of the San Francisco office, also perform a strictly local service for customers in the area. No inter-state activities are involved by defendants' employees when they conduct their investigations transmit their findings and submit reports to customers. This is true of all of defendants' offices. Mailing from Oregon and Washington to San Francisco is strictly inter-office correspondence.

The basic issue to be resolved is whether the investigators and office employees of defendants are engaged "In commerce or in the production of goods for commerce," within the meaning of the Fair Labor Standards Act.

A judicial interpretation of the Act has involved the courts in the empiric process of drawing lines from case to case, and inevitably nice lines. 10 E. 40th St. Bldg. v. Callus, 325 U.S. 578, 579, 65 S.Ct. 1227, 89 L.Ed. 1806; Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

Occasionally, the lines are shadowy, ill-defined and diffused; very often the adjudications under the Act are varied and somewhat conflicting. The answer to the problems herein should transcend an exercise in scholastic logic and be predicated upon a realistic approach, mindful that the courts should be alert not to take over or intrude upon purely local affairs.

The primary problem for solution: Does the definition of the word "goods" as contained in the Act embrace or cover the investigative reports, communications and advice, and the transmission thereof.

Section 203(i) defines "goods" to mean "goods * * *, wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof."

The broadest interpretation could not bring the investigative service or the reports within the contemplation of the foregoing definition. They are specifically compiled and prepared to meet the particular problem of a specific client and are not sold or offered for sale to the public generally. McComb v. Turpin, D.C., 81 F.Supp. 86, 89. To this extent they are unlike stocks, bonds and commercial papers which are themselves instruments of commerce.

In Bozant v. Bank of New York, 2 Cir., 156 F.2d 787, 789, Circuit Judge Learned Hand observed the underlying distinction.

"Some of the activities which went on, we agree should on no theory be counted. A lawyer who in the course of his practice writes letters, or draws deeds or wills, or prepares briefs and records, is not on that account within § 203(j); and the same is true of the correspondence of a broker and of a banker. The definition of 'goods' in § 203(i) might literally go so far even as that; but it would be unreasonable to the last degree to suppose that Congress meant to cover such incidents of a business whose purpose did not comprise the production of 'goods' at all. Indeed, were it otherwise, the Act would sweep into its maw every business, however local, which manufactured nothing whatever, merely because it was carried on by corres-

pondence, which is the case with all business." Cf. Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667, 670.

■ *The defendants' employees are not engaged in commerce within the contemplation of the Act*: It appears affirmatively from the facts that the investigative work was performed wholly within the State with the exception of a comparatively small amount in Oregon and Washington. The fact that a customer of the defendants may pass the information, reports or service on to an office located outside of the State does not transform an intrastate operation into one in "commerce." McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538. Nor does the fact of mailing between the offices bring the employees within the coverage of the Act. McComb v. Turpin, supra.

The history of the Act as shown by a statutory review of 29 U.S.C.A. 203(j) and the discussion centering around Congressman Lucas' request for an amendment in 1949, discloses that the Act was not intended to cover businesses of a purely local type. Kelly v. Ford, Bacon & Davis, 3 Cir., 162 F.2d 555.

As a secondary defense the defendants assert that if the Act is considered of sufficient breadth to encompass an investigative business, then their operations fall within the specific exemption contained within 29 U.S.C.A. 213(a) (2). This excludes from the overtime requirements employees engaged in a "retail or service establishment." The section reads in part:

"* * * any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per cen-

tum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."

The three qualifications which are required in order to bring the business within the scope of the exemption are: (a) more than 50 per centum of their annual dollar value comes from within the State; (b) at least 75 per centum of their dollar volume consists of sales of service not for resale; (c) the services are regarded as retail in the private investigative industry. The first two propositions are conceded by plaintiff. It is only with the latter—(c)—that there is disagreement.

■ The defendants' representative, Mr. Schneider, testified during the hearing that the business is regarded generally as a retail or service establishment in the industry. As a man who spent his career in this particular field his testimony is to be given credence and cannot be rejected or ignored. No testimony was offered rebutting his characterization or generalization as to the nature of the business being "retail." These statements should be given their proper weight. See Boisseau v. Mitchell, 5 Cir., 218 F.2d 734. The business, it appears, is conducted on a uniform basis with all types of customers at the same price and the sales are made directly to the ultimate consumer. Mitchell v. T. F. Taylor Fertilizer Works, D.C., 136 F. Supp. 740, 744.

■ In view of the fact that defendants' business is recognized as "retail services in a particular industry," it meets the three specific requirements of 29 U.S.C.A. § 213(a) (2). Thus, defendants are entitled to the exemption provided for in the section.

It is ordered that judgment be entered in favor of defendants consistent with this opinion.